CITY OF NEWPORT NEWS v. POTTER.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1903.)

No. 472.

1. MUNICIPAL CORPORATIONS—ACTION ON CONTRACT—DEFENSE OF ULTRA VIRES.

In an action against a city on a contract by which plaintiff was employed to superintend the construction of a sewer, the declaration need not allege that the city had power to make the contract, which will be presumed, as well as that such authority was properly exercised; the contract being on its face valid and within the scope of the general powers of the city.

2. DECLARATION IN ASSUMPSIT—SUFFICIENCY UNDER VIRGINIA CODE.

Under Code Va. 1887, § 3272, which provides that on demurrer the court shall not regard any defect or imperfection in a declaration unless there be omitted something so essential to the action that judgment according to law and the very right of the cause cannot be given, a common count of indebitatus for services rendered, in a declaration in assumpsit, is not subject to demurrer because of the omission of the usual allegation of a promise to pay.

3. CONTRACT—ACTION BY ONE NOT A PARTY—VIRGINIA STATUTE.

Under Code Va. 1887, § 2415, which provides that, if a covenant or promise be made for the sole benefit of a person with whom it is not made, such person may maintain an action thereon in his own name, where a contract with a city for the construction of a sewer required the city to deduct from the amount due the contractor a specified sum for each day's delay in the completion of the work beyond a time specified, and to pay such sum to the engineer employed by the city to superintend the work, the engineer may maintain an action on such covenant in his own name.

4. ASSUMPSIT—EVIDENCE.

Under a count in indebitatus assumpsit for services rendered, evidence is admissible to prove the value of such services.

5. CONTRACTS—CONSTRUCTION.

Provisions of an ordinance construed in relation to the right to compensation of an engineer, who was thereby directed to take charge of the completion of a sewerage system after its abandonment by the contractor.

6. SAME—ENTIRETY.

An engineer employed by contract with a city to supervise and inspect the work of a contractor in constructing a sewer system, who, after the abandonment of the work by the contractor, was directed by a resolution of the city council to take charge of the completion of the same, may maintain an action to recover for the services so rendered on a quantum meruit, and his right to recover is not precluded by the fact that he may have failed to perform some of the duties required by his prior contract.

7. EVIDENCE—PROOF OF INDEBTEDNESS—PAYMENT MADE IN COMPROMISE.

Evidence of a compromise and settlement between a city and a contractor, which has been executed and under which the city paid a sum to the contractor for work done under the contract, is admissible in evidence against the city in an action by a third person to establish the fact and amount of the city's indebtedness to the contractor.

8. MUNICIPAL CORPORATIONS—POWER TO CONTRACT—IMPLIED OBLIGATIONS.

A provision of a city charter that "all contracts for the erection and construction of public improvements shall be let to the lowest responsible bidder" has no application to the employment of an engineer to supervise the work of a contractor or to repair and complete work only par-

---

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. §§ 910, 2203, 2206.

122 F.—21

tially completed by the contractor, where such work is done at the contractor's expense, and the city may obligate itself by implication to pay for the services so rendered.

9. SAME—VALIDITY OF CONTRACT FOR PUBLIC WORK—NOTICE TO BIDDERS.

A provision of a city charter that contracts for public improvements shall be let to the lowest bidder, and that "notice shall be given thirty days before the work is finally let by advertisement in one or more newspapers," does not render a contract invalid because only 29 days intervened between the date of the first notice and the opening of the bids, where the contract was not let until some weeks later, nor does it require the notice to be published daily during the 30 days, a single publication being sufficient.

10. SAME—WAIVER OF CONDITIONS.

A modification of a contract by a city, or a waiver of conditions therein, found to be prejudicial to its interests, may be made by implication.

In Error to the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

R. G. Bickford and J. A. Massie, for plaintiff in error.

O. D. Batchelor and W. R. Ferkins, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge. This is an action of assumpsit brought in the Circuit Court for the Eastern District of Virginia by Alexander Potter, a citizen of New York, against the city of Newport News. There was a verdict and judgment for $4,000 and costs in favor of the plaintiff below. The case is brought here by the city on writ of error. In March, 1898, bids were invited by the city for the construction of a sewer system, the plans and specifications for which had been previously prepared by Mr. Potter, and on June 23, 1898, the city council by resolution awarded the contract to the lowest bidders, M. Honan & Sons. On June 25th a written contract, which had been drafted by Potter, was signed by Honan & Sons, and was executed under its seal by the city. Clauses 10 and 23 of this contract, which will be called the Honan contract, must be here set out for a proper understanding of some of the controverted questions in this case.

"Clause 10. In case of any unnecessary or inexcusable delay in the general conduct of the work, the engineer will notify the contractor in writing to that effect. If the contractor should not, in five days thereafter, take such measures as will, in the judgment of the engineer, insure the satisfactory completion of the work in the specified time, the engineer may then, by and with the consent of the council, notify the aforesaid contractor to discontinue all work under this contract, and it is hereby agreed that the contractor is to immediately respect said notice and stop work. The engineer shall thereupon have the power to take such and as many persons as he may deem advisable, by contract or otherwise, to work at and complete the work herein described, and to use such materials as he may find upon the line of said work, or to procure other materials for the completion of the same, and to charge the expense of said labor and the material to the aforesaid contractor, and the expense so charged shall be deducted and paid to the parties of the first part out of such moneys as may then be due to the said contractor under and by virtue of this agreement, or any part thereof; and in case such expense is less than the sum which would have been payable under this con-

tract if the same had been completed by the party of the second part, the contractor shall be entitled to receive the difference. If the expense is greater, then the bondsman will be called upon to make good the difference."

"Clause 23. Construction work must begin as soon as practicable and all of the work enumerated in this contract and specifications shall be entirely completed and ready for acceptance on or before the first day of December, 1898. And it is distinctly understood that the time specified for the completion of said work is of the essence of this contract, and said contractor shall not be entitled to claim performance of this contract unless the work is entirely completed in every respect on or before the date specified. If the contractor is permitted to finish the work there shall be deducted from money due the party of the second part the sum of twenty-five (25) dollars per day for each and every day's delay in the completion beyond the time set in this contract for engineering and inspection, which amount shall be paid to the engineer. And the said party of the first part agrees to pay to the party of the second part an equal per diem amount for each and every day the work is completed before the date set for completion to be paid by the engineer."

On June 27, 1898, a written contract, the terms of which had in the main been previously agreed on, between Potter and the city was executed. By this contract Potter agreed to supervise and superintend the construction of the sewer system, and to provide at his own expense such engineers, inspectors, and other employés as might be necessary to secure compliance by the contractor with the plans and specifications. He was also to give to the work so much of his own time and talents as might be needed to thoroughly protect the interests of the city, and to see that the work of the contractors was done in a complete and satisfactory manner. For such services the city agreed to pay Potter 6½ per cent. of whatever sums might become due to Honan & Sons, to be paid as installments became payable to the contractors.

Early in the progress of the work it was unexpectedly found that the pipe lines in many places passed through quicksand. This so much increased the difficulties and cost of the work that Honan & Sons, after some months of effort, ceased to attempt a compliance with their contract, and on January 24, 1899, abandoned the still incomplete work. Under clause 10 of the contract, notice having been given without effect, the council by resolution of February 4, 1899, formally ordered Honan & Sons to cease work. When Honan & Sons made the contract with the city they gave a bond for $40,000, conditioned on compliance with the contract. The surety on this bond had been indemnified by a counter bond made by the Delaware County Trust, Safe Deposit & Title Insurance Company, and to this company—to be hereafter called the Delaware Company—Honan & Sons assigned their contract with the city. On February 8, 1899, the Delaware Company proposed that it would take up and finish the contract of Honan & Sons. By resolution of March 8, 1899, this proposition, with some additions to be hereafter mentioned, was accepted. The Delaware Company took up the work on or very shortly after March 8th, and continued at it until October 3, 1899, when it ceased work, leaving the system in an unsatisfactory condition. The city paid the Delaware Company in installments until July 1, 1899, but refused to pay for the work done between July 1 and October 3, 1899, and it was not until a compromise was effected

between the company and the city, in December, 1900, that any payment was made to the company for this part of the work.

On November 9, 1899, a resolution was adopted, which, in so far as is now material, reads as follows:

"Whereas, the Delaware County Trust, Safe Deposit and Title Insurance Company failed to construct, clean, and repair the sewer system of this city, in accordance with the provisions of its contract with said city, within the time limited by said contract; and whereas, the said company has, since the expiration of its time limit, stopped work on the said sewers, and has done no work under the said contract or in the construction, cleaning, and completing the said sewers thereunder, since the 3d day of October, 1899; and whereas, the said company did, on the 3d day of October, 1899, notify the council that it had or intended to abandon its contract and to cease said work; and whereas, the said company was notified on the 19th day of October, 1899, that its work had been and was being unnecessarily and inexcusably delayed, and to take such measures as would insure the satisfactory construction, cleaning, and completion of said work under its contract; and whereas, no measures of the kind required have been taken, and the said company has no apparent design of performing its said contract, and of constructing, cleaning, and completing the sewers in accordance therewith; and whereas, the said sewers have not been sufficiently and satisfactorily constructed, and those that are built are partially filled with sand and other obstructions, and are totally unfit for service as sanitary sewers, and in their present condition useless for that purpose: * * * (1) Be it ordained by the common council of the city of Newport News that Alexander Potter, the engineer who has been supervising the construction of the said sewers, be, and he is hereby, authorized, empowered, and directed to take up and continue the work under the provisions of the aforesaid contract, and to construct such sewers as the said contract provided for, which remain unconstructed, and to remove all obstructions from and thoroughly cleanse and repair all of the said sewers which have been or may be constructed under the provisions of the said contract, so that the said sewers may be made into a serviceable and first-class system of sanitary sewers, as contemplated and provided in the aforesaid contract, and to properly place sewer pipe wherever the same may have been left out in the work of construction. The work shall be done under the supervision of the special committee on sewers of this council; that the said Alexander Potter be, and he is hereby, in order to properly perform the said work, authorized and empowered, by and with the advice and consent of the said special committee on sewers, to employ such laborers, mechanics, and foremen as may be necessary to satisfactorily and expeditiously carry out the object of this ordinance. * * * (4) That Alexander Potter, the engineer, shall not receive, by reason of the passage of this ordinance or for any work done hereunder, any compensation in addition to what he may be entitled to under his contract with the city for superintending the sewer construction work in this city."

Potter was paid the 6½ per cent. on all sums paid the contractor prior to November 9, 1899, and had received practically all of these payments before that date. Honan & Sons paid him the $25 per day for the time they continued at work after December 1, 1898, and the Delaware Company paid him the same per diem until July 1, 1899. This action was brought to recover $8,150, being the $25 per day from July 1, 1899, to July 16, 1900, at which time Potter had been ordered by the city to stop work. The first count of the amended declaration is based on the theory of an express contract right on the part of Potter to have $25 per day for the services of himself and his employés. The second and third counts—there are but three counts—read as follows:

"And for this also, to wit, that the defendant is indebted to plaintiff in the sum of $8,150, with interest thereon from the 16th day of July, 1900, for other money by the said defendant, before that time, had and received to and for the use of said plaintiff, which sum the defendant then and there faithfully promised to pay to plaintiff when it, the defendant, should be thereunto afterwards requested.

"And for this also, to wit, that the defendant is indebted to the plaintiff in the sum of $8,150.00, with interest thereon from the 16th day of July, 1900, for services rendered the defendant by the plaintiff at the special instance and request of the defendant."

The city demurred to the amended declaration, and to each count, and filed written grounds of demurrer. The demurrer was overruled. Thereupon the city filed a plea of non assumpsit and several special pleas, on which issue was joined, raising several of the points to be hereinafter considered. The first assignments of error are based on the action of the trial court in overruling the demurrer.

The first ground of demurrer is that the declaration does not in any count allege that the city "had authority to make the contract or incur indebtedness." In 14 Ency. Pl. & Pr. p. 243, it is said: "When a municipal corporation seeks to avoid its contract on the ground of its want of power to contract, and the contract is not upon its face necessarily beyond the scope of its authority, its authority to make such contract will be presumed, and in an action on the contract the defense of ultra vires must be both pleaded and proved." See, also, 5 Ency. Pl. & Pr. pp. 95, 96; 1 Dill. Munic. Corps. (4th Ed.) § 457; 4 Thomp. Corps. § 5644; Green's Brice, Ultra Vires. p. 37. Certainly a contract for supervising the construction of a city sewer is not upon its face necessarily beyond the scope of the city's authority. This ground of demurrer was not well taken.

The second ground of demurrer is that it is not alleged that "the said contract was let and concluded as prescribed by the city charter." Without mentioning other reasons why this ground of demurrer is bad, it is sufficient to say that the authorities above cited fully sustain the action of the trial court in this respect.

The third ground of demurrer is "that the said declaration does not, nor does any count thereof, contain any allegation sufficiently certain that the defendant promised to pay plaintiff the sum declared for in said declaration." In the first and second counts the allegation of the promise to pay is made. This ground therefore relates only to the third count, which is the common count of indebitatus for services rendered, omitting the usual allegation of a promise to pay. Under the strict rule of the common law, this allegation is necessary. 1 Chitty, Pl. (16th Am. Ed.) pp. 392, 394; 4 Minor's Insts. (3d. Ed.) p. 697; Cooke v. Simms, 2 Call. 39; Winston v. Francisco. 2 Wash. (Va.) 188; Sexton v. Holmes, 3 Munf. 566; Wooddy v. Flournoy, 6 Munf. 506. But contra, Andrews' Stephens, Pl., note, pp. 110, 111. However, section 3272, Code Va. 1887, reads:

"On a demurrer * * * the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has been heretofore deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defence, that judgment according to law and the very right of the cause, can not be given. * * *"

This statute, taken from 27 Eliz. c. 5, first appeared in the Code of 1819 (1 Rev. Code 1819, p. 511, c. 128, § 101), subsequent to the institution of the cause of Wooddy v. Flournoy, supra. Our attention has not been called to, nor have we found, any Virginia case decided since this statute was enacted which holds that a promise to pay must be alleged in the common count of indebitatus assumpsit.

When the plaintiff alleges that the defendant is indebted to him for services rendered at the request of the defendant he has said enough to imply a promise by the defendant to pay for the services. The common-law rule requiring that a promise, not expressly made but implied by law, must be averred, is so highly technical that we cannot, having in view the statute above quoted, hold that the trial court committed error in refusing to sustain the demurrer on this ground.

The grounds of demurrer numbered 4 and 5, being assignments of error of the same numbers, have been abandoned, as have also assignments numbered 8, 9, 13, 14, 16, 17, 18, 19, 20, 21, 23, and 33. Assignments 7 and 12 we consider of insufficient merit to warrant discussion.

The sixth ground of demurrer—being the sixth assignment of error—is based on the idea that as Potter was not a party to the Honan contract he cannot base a right of action thereon. The first count in the declaration sets out clause 23 of the Honan contract; alleges that the city permitted Honan & Sons to finish the work; and that in pursuance of such permission Honan & Sons, their assigns, and those acting for them and at their risk, continued the work until July 16, 1900. In this count the contract between the city and Potter is also referred to as showing the nature of the services to be rendered by Potter. By section 2415, Code Va. 1887, it is provided:

"When Person not Named a Party, or Named Jointly with Others, May Take or Sue under Instrument.—An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain in his own name any action thereon, which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

It is urged upon us that this statute does not give Potter the right to base an action on clause 23 of the Honan contract. It is said that the covenant in that clause is not solely for Potter's benefit, but partly for the benefit of the city, and that the benefit to Potter is only incidental. We think the statute was enacted for a double purpose. One was to change the rule of the common law that one not a party to a deed inter partes could not sue for a breach of a covenant therein made for his benefit. The other purpose was to change the common-law rule that a suit for breach of a covenant made with two persons for the benefit of one of them must be jointly brought by both the covenantees. Hence the words "sole benefit" in the statute are not to be construed as relating to the covenantor, but

as relating to the other joint covenantee. The covenant in clause 23 was certainly not made for the benefit of Honan & Sons. As between them and Potter, the covenant 's for the sole benefit of the latter. It follows that it is immaterial whether or not the covenant was intended to benefit the city, and it is also immaterial whether it was intended primarily or incidentally to benefit Potter. But as the question has been raised we may say that we regard clause 23 as having been intended primarily to compensate Potter in case of delay in completion of the work beyond the contract period, and was intended to be of benefit to the city only incidentally, in that it penalized delay by the contractor. See 1 Chitty, Pl. 4, 5; 3 Rob. (New) Pr. 16–23; Ross v. Milne, 12 Leigh, 209, 37 Am. Dec. 646; Jones v. Thomas, 21 Grat. 96; Clemmitt v. Ins. Co., 76 Va. 360. In this connection, as explaining the anomaly of an action of assumpsit on a sealed instrument, it is to be noted that by a recent Virginia statute it is provided that assumpsit may be maintained in any case in which an action of covenant will lie. Acts 1897–98, p. 103, c. 96.

The tenth assignment of error is based on the action of the trial court in allowing the Honan contract to be read in evidence. The sole ground of objection is the one just considered under the sixth assignment, that as Potter was not a party to the contract he could not sue on it. The contract was properly admitted as proving the express contract relied on in the first count. It was also admissible as tending to prove the value put on Potter's services by the city, which, as will be shown later, was a question properly submitted to the jury.

We defer examination of the eleventh assignment, as requested by counsel, until we reach the twenty-sixth assignment.

The fifteenth assignment questions the propriety of the action of the trial court in allowing the following question to be asked, and answered by Potter: "What do you consider the value of your services per day from July 1, 1899, to July 16, 1900?" The sole ground of objection is that there is no count in the declaration under which this evidence is admissible, as the third count is bad for want of an allegation of a promise to pay. We have sufficiently considered this objection to the third count. It is true that the third count is not technically a quantum meruit count. But the use of the technical quantum meruit has been abandoned in practice (4 Minor's Insts. 700; 2 Ency. Pl. & Pr. 1002), because under the indebitatus count for work done, etc.—which the third count is—evidence of the value of the services rendered is admissible, and there is no necessity for the use of the quantum meruit, strictly so called. "In an action of indebitatus assumpsit, the plaintiff may prove that the work was done at the defendant's request, and the value of it." B. & O. R. Co. v. Polly, 14 Grat. 455.

The instructions given the jury are as follows:

"That the right of the plaintiff to recover in this case is limited to such services as were performed by him between the period commencing on the 1st day of July, 1899, and ending on the 16th day of July, 1900; and that the said plaintiff is entitled to recover such amount as his services were reasonably worth for the work performed by him during the said period, such recovery,

however, not to exceed the rate of twenty-five dollars ($25.00) per secular day.

"And they are further charged that, if they believe from the evidence that the plaintiff failed to perform his duty as such engineer, then they may make such deduction on account of such failure as to them may seem right and proper under all the circumstances.

"And they are further charged that, if they believe the plaintiff failed to discharge any particular duty by and with the acquiescence and consent of the defendant, such failure should not be charged against him.

"And they are further charged that if they believe from the evidence that the plaintiff, without the consent and acquiescence of the defendant, permitted the contractor to deviate from the contract, or that the plaintiff without such consent and acquiescence did not provide for a sufficient inspection of the said work and material, and that such deviation from the contract, and failure to provide for inspection, was a careless and negligent performance of the duties imposed upon the plaintiff, and that as a result thereof the sewer system of the said city was improperly constructed, and is a source of continual expense to the city, then they should consider such negligence, and the injury to the city therefrom, in arriving at their verdict.

"They are further instructed and charged that the mere circumstances of the city's retention of the plaintiff in its employ does not, of itself, establish acquiescence on its part in any particular method of the discharge of his duties in the premises."

We may here consider the nature of Potter's right of recovery. We do not find in either of the contracts of June 25 and June 27, 1898, any express contract right on the part of Potter to the per diem, except in the event that the work was protracted later than December 1, 1898, and in the event that the contractor was permitted to continue at the work. For the period from July 1 to November 9, 1899, Potter's right of recovery should, we think, have been based on the express contract right given him by clause 23 of the Honan contract. But we do not perceive that the view taken by the trial court—basing Potter's right of recovery on the value of his services— as to this period was prejudicial to the city. The contract provided that the city should deduct from the contractor and pay to Potter $25 per day. The evidence offered of the value of his services put $25 per day as the value. The court instructed that he might recover the value of his services, subject to all proper deductions, not exceeding $25 per day. Certainly the city cannot complain of this.

The question now arises as to the propriety of the instructions in so far as they allowed a recovery based on an implied contract that the city should pay Potter the value of his services for the period from November 9, 1899, to July 16, 1900. Inasmuch as the services were performed, were of value to the city, and as the benefit thereof was accepted by the city, we can conceive of no reason why Potter should not have recovered therefor, unless it be that one or both of the following contentions made by the city are sound: (1) That the written contract of June 27, 1898, between Potter and the city is his only ground of recovery, and excludes a right of recovery based on an implied contract; and (2) that clause 4 of the resolution of November 9, 1899, prevents any recovery for services rendered after that date.

The written contract of June 27, 1898, is not, as we think, the (express) contract sued on. It merely specifies the services to be per-

formed by the engineer. The intent of the parties, as gathered from both this contract and the Honan contract, was that the city should pay the engineer a sum equal to 6½ per cent. of the contract price of the system for services which it was anticipated would extend over the period from July 1 to December 1, 1898. If the contractor accomplished the work in less time, the city was to deduct from the amount that would otherwise have been paid to the engineer $25 for each day short of the contract period and pay it to the contractor. If the contractor did not finish within contract time, and was permitted to continue the work, the city was to deduct from the sums that would be otherwise payable to the contractor $25 for each day beyond the contract period, and pay these sums to the engineer. In other words, the contract of June 27th does not provide for, or relate to, services performed after December 1, 1898, further than to specify the nature of the duties to be performed by Mr. Potter in supervising and inspecting the work.

The contention that clause 4 of the resolution of November 9, 1899, prevents any recovery for services rendered thereafter, does not strike us as sound. The testimony was that the percentage on the sums to be paid to the contractors provided for by the contract of June 27, 1898, had practically all been paid to Potter before the passage of this resolution. We cannot conceive that the council intended by this resolution that the engineer should for an indefinite period (which in fact extended for about eight months) continue to give his own time and skill and that of assistants employed at his expense without adequate compensation. The period for which he was to give the services of himself and his assistants for the percentage alone had long since passed. Previous to the date of this resolution the duties of the engineer and his employés were merely to inspect and supervise the work of the contractors. Under this resolution the engineer had the additional duty of employing laborers, and, in effect, of executing, instead of merely supervising, the work. In view of the disappointments suffered by the city, it was not unreasonable for the council to suppose that Mr. Potter would be willing to assume some increase of labor and responsibility without additional compensation. And it was, we think, the sole intent of clause 4 to prevent any claim by Potter for compensation in excess of $25 per day. The language in that clause—"his contract with the city"—should be construed as referring to his supposed rights under clause 23 of the Honan contract. He had ever since December 1, 1898, been receiving the per diem as well as the percentage. That the city intended that Potter should continue to work, and should increase his labors, for the slender compensation of 6½ per cent. of such sums as might thereafter be paid mainly for labor in repairing and cleaning the sewers, is not reasonable on its face, and becomes very unreasonable when we recall that all the expenses to be incurred under this resolution were to be charged to the Delaware Company. In other words, the city had neither the right to expect Potter to relinquish his claim to the per diem, nor any great interest in asking him to do so. When the city first employed Mr. Potter it agreed to pay for services

expected to extend from July 1 to December 1, 1898, 6½ per cent. of $75,906.75—a rate of over $32 per day. In the resolution of November 9, 1899, the sum of $5,000 was appropriated to cover the cost of the work contemplated by that resolution. The time actually used by Mr. Potter for this work, until he was ordered by the city to leave it still unfinished, was about eight months. Unless the council contemplated that the work would be finished within 10 or 12 days—and we know from the evidence that the council had no such idea—we cannot, with any show of reason or justice, give to clause 4 the construction now contended for by the city.

The contention that there was no competent evidence that money became due to the contractor will be discussed more appropriately in another connection.

Assignment 22 will be considered later.

Assignment 24 is to the action of the trial court in refusing to give the following instruction:

"The court instructs the jury if they believe from the evidence that the plaintiff never performed the duties of inspection required of him in his contract with the city, he is not entitled to recover in this action."

We do not perceive any error in the action of the court below in refusing the instruction. As we view the case, there was no express contract covering all of the services sued for. We have heretofore expressed the opinion that the third count in the declaration is good. The doctrine of entire contracts does not seem to us to be at all applicable here. 3 Minor's Insts. 331, 332; 3 Am. & Eng. Ency. 916 et seq.; Burdine v. Burdine, 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741; Matthews v. Jenkins, 80 Va. 463.

Assignment 25 is based on the refusal of the trial court to give the following instruction:

"The court instructs the jury that the provisions in the contract between M. Honan & Sons and the city of Newport News for the deduction of the sum of $25 per day to be paid to the engineer gives no right to the plaintiff in this case, and he is not entitled to recover thereon."

Inasmuch as the court below by the instructions given the jury based the plaintiff's right of recovery solely on the third count in the declaration, it is difficult to perceive how the city was prejudiced by the refusal to give this instruction. The instructions actually given in effect directed the jury that they could not find for the plaintiff on the theory that clause 23 of the Honan contract gave him a right to the per diem.

It is in this connection contended that no money became due to Honan & Sons. The resolution of March 8, 1899, in response to a proposal by the Delaware Company that it be allowed to "take up and finish" the Honan contract, provided that the said company be given the right "to finish * * * the sewerage system * * * under the contract of June 25, 1898, * * * according to the terms thereof." The commencement of work by the company to "be construed to be an assumption of all the provisions of said contract." This resolution provided an additional penalty in case the Delaware Company failed to complete the work within a specified period, but it did not expressly or impliedly abrogate clause 23 of the Honan

contract. For the period from July 1, 1899, until the resolution of November 9, 1899, went into effect, it is, we think, essential to Potter's right of recovery that money become due from the city to the contractor. In so far as it may be said that money did not become due to Honan & Sons, this contention is a mere verbal quibble, if money became due to the Delaware Company. This company was Honan's successor, and stood in Honan's shoes. That a large amount of money became due to the Delaware Company was conclusively shown by the evidence of the compromise made in December, 1900. Under this compromise the city paid the Delaware Company $25,333. Evidence of this compromise was objected to by the city—this being the eleventh assignment of error—but we think the court below properly admitted it. The doctrine that offers of compromise are inadmissible is not applicable here. The compromise had been executed prior to this trial, and it was not a compromise to which Potter was a party. The authorities cited in the brief of counsel for the city do not seem to us to support their contention.

Assignment 26 is based on the refusal of the trial court to instruct the jury that the plaintiff could not recover on the second count in the declaration, for money had and received. We think it unnecessary to determine the propriety of an instruction that the plaintiff could recover under the second count. It is sufficient to say that the trial court in effect instructed as was here asked by the city, and no error prejudicial to the city can be here found.

Assignments 27 and 34 are based on the action of the court below in refusing an instruction that the plaintiff could not recover on the third count, and in giving the instructions that were given. We have sufficiently explained our reasons for approving the action of the trial court in this respect. While that court did not adopt the view that Potter's right of recovery for services rendered from July 1 to November 9, 1889, was an express contract right, and based his right solely on the value of his services, the city was not prejudiced thereby.

In this connection it is urged that the city could not render itself liable on an implied contract. Counsel rely on the clause in the city's charter reading: "All contracts for the erection and construction of public improvements shall be let to the lowest responsible bidder. * * *" If the city had desired the services of a counsellor at law concerning some contemplated public miprovements, it would not be seriously contended that the lowest responsible bidder must have been employed. And it seems to us that the services of a consulting and supervising engineer are in the same category as those of a legal adviser. Moreover, the implied contract between Potter and the city, under the resolution of November 9th, was that he should be paid for his services in connection with completing, cleaning, and repairing the partially completed work. And this was to be done at the expense of a contractor to whom, in effect, the erection and construction of the system had been, as will be shown hereinafter, duly let after advertisement and competitive bidding. We do not think the provision of the charter referred to is applicable to this state of facts.

We should here consider the question of ultra vires so pressed by counsel for the city, and made the basis of numerous assignments of errors. The clause of the city charter above quoted continues as follows: "And notice shall be given thirty days before the work is finally let, by advertisement in one or more newspapers." The advertisement preceding the contract with Honan first appeared on March 2, 1898, and was published only in weekly newspapers. It announced that bids would be received on March 31, 1898, and that the specifications would be ready for examination on March 15, 1898. The contract was not "finally let" to Honan until late in June, 1898. The charter does not require that notice shall be given 30 days before the bids are made, but 30 days before the work is finally let. Nor can we read the charter as requiring that the advertisement be published on each of the 30 days. "Notice shall be given thirty days before the work is finally let in one or more newspapers." We think a single insertion would suffice under this requirement, and in fact numerous insertions were made in each of several newspapers. See Turnpike Co. v. Ward, 13 Ohio, 120, 42 Am. Dec. 191; Craig v. Fox, 16 Ohio, 563; Andrews v. Railroad, 14 Ind. 169; Woodward v. Collett (Ky.) 48 S. W. 164; Weld v. Rees, 48 Ill. 428; Jenkins v. Pierce, 98 Ill. 646. The fact that the specifications were not exhibited prior to March 15, 1898, does not seem to require an extended discussion. The charter does not contain any express provision on the subject; its implied requirement is merely that specifications be provided a reasonable time in advance of the bidding. And the time allowed in this instance seems to us sufficient.

In view of what we have heretofore said, we see no necessity for discussing the 28th, 29th, 30th, and 31st assignments. The trial court committed no error in refusing these instructions.

The 32d, 35th, and 36th assignments are based upon the refusal of the court to charge that any failure by Potter as to inspection should be considered and deducted for, although the council knew of such failures, and upon the giving by the court of the instruction above quoted touching this feature of the case. The charge of a failure by Potter to perform his duties was based chiefly on the fact that for a considerable time while Honan was at work Potter had no inspectors on duty. This fact came to the attention of the council, and because of it he was summoned to appear before that body to show cause why he should not be dismissed. He appeared before the council, and must have satisfied the members that his action was justifiable. The council did not dismiss him. It took no affirmative action at all. In the language of the mayor, Potter "talked them all down." Under the evidence, we think that the city was not prejudiced by the refusal to instruct as it requested, as the instructions given fairly and fully covered every phase of the evidence. The action of the council, acquiescing in the engineer's view, that it was to the interest of the city at that juncture to make no inspection of Honan's work, was not a rescission, but at most a mere modification, of the contract between them. A modification of a contract, or a waiver of conditions in a contract found to be prejudicial to its interests, can be

·made by a municipal corporation by implication. 1 Dill. Mun. Corp. (4th Ed.) § 451; Messenger v. Buffalo, 21 N. Y. 199; Randolph County v. Post, 93 U. S. 502, 23 L. Ed. 957.

The 34th, 35th, 36th, and 37th assignments have been sufficiently discussed heretofore. The 38th assignment—because the court refused to set aside the verdict, or, in other words, because the motion for a new trial was overruled—is not reviewable here. 2 Foster's Fed. Pr. (2d Ed.) § 376; Prichard v. Budd, 22 C. C. A. 504, 76 Fed. 710.

Assignment 22 is that the court erred in overruling the motion made by defendant at the close of the testimony and before the charge. We have not found in the record what this motion was or that an exception was taken. However, if we go to the brief to learn that the motion was that the jury be directed to find a verdict for the defendant, every reason urged in support of this assignment of error has already been considered, and our approval of the action of the trial court has been expressed.

Affirmed.