King, J.,
delivered the opinion of the court.
January 8, 1908, E. Gr. Coray, the appellee, brought his suit to recover from the City of Colorado Springs the sum of $2,360 for services alleged to have been rendered by him for the city between May 6, 1902, and April 20,1903. After hearing the evidence, the court instructed the jury to return a verdict in favor of the plaintiff in a sum to be found by it as the reasonable value of his services, computed at not less than five dollars per day, nor more than eight dollars per day, for a number of days not less than 293 nor more than 295, together with interest from April 20, 1903. Verdict was accordingly returned for the sum of $3,113.12, upon which judgment was rendered.
It is urged that the court erred in directing a verdict; that thereby the court invaded the province of the jury and took from it the question of the credibility of the plaintiff, upon whose testimony alone the alleged fact of employment, manner of employment, and time of service, rested. As to those essential matters the testimony of plaintiff was neither disputed nor corroborated by any *462 other witness. The general rule that the trial court should not in its charge to the jury treat as doubtful and open to consideration a matter concerning which there is no dispute, and that the jury has no right to arbitrarily disregard the positive testimony of unimpeached and uncontradicted witnesses, is conceded; but it is insisted that this "rule in no manner conflicts with or militates against the equally well established rule, that the court should, not in its charge, assume as undisputed and proven, a material fact in issue by the pleadings, where the only testimony in support thereof is that of the plaintiff, or some other person directly interested in the result of the suit. This contention is sustained by abundant authority and satisfactory reason. — Ward v. Atkinson, 22 Colo. App., 134, 123 Pac., 120; Turner v. Grobe, 24 Tex. Civ. App., 554, 59 S. W., 583; Minoz v. Wilson, 111 N. Y., 295, 18 N. E., 855; Sonnentheil v. Brewing Co., 172 U. S., 401, 19 Sup. Ct., 233, 43 L. Ed., 492; Elwood v. Western Un. Tel. Co., 45 N. Y., 349; Thompson on Trials, sec. 2287. A few quotations from the foregoing cases will suffice to justify our conclusion.
“Where a plaintiff testifies in his own behalf, his interest in the result of the suit may be considered and the questions of his credibility and the truth of his statements should be left to the jury. It was error to assume in the charge that plaintiff’s statements on the stand were true.” — Turner v. Grobe, supra, page 557 (59 S. W., p. 85). *463 ing Co., supra, page 408, 19 Sup. Ct. R., 236, 43 L. Ed., 492.
*462 “And while the jury has no right to arbitrarily disregard the positive testimony of unimpeached and uncontradicted witnesses, the very courts that lay down this rule qualify it by saying the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.” — Sonnentheil v. Brew
*463 “The witnesses, though uninrpeached, may have such an interest in the question at issue as to affect their credibility. The general rules laid down in the books at a time when interest absolutely disqualified a witness, necessarily assumed that the witnesses were disinterested. That qualification must, in the present state of the law, be -added.” — Elwood v. Western Un. Tel Co., supra, p. 554 (45 N. Y., 554).
The discussion of this question by Cunningham, J., in Ward v. Atkinson, supra, makes any further discussion of it here unnecessary. But under the condition of this record, the rule contended for by appellant is especially applicable. It appears from the plaintiff’s own testimony that during the time he claims to have been engaged in performing the services for which suit is brought, certain controversies between him and the city arose and were bitterly contended for and contested. That thereby his relations with the city became so strained that he resigned his official position as building inspector, and from his alleged employment, and for nearly three years thereafter presented no claim for services as superintendent, at which time he filed a claim for five dollars per day instead of eight as demanded in the suit. For those reasons, the credibility of plaintiff’s evidence against the city might be regarded as affected by his animus as well as by his pecuniary interest in the result of the suit. It also appears from the evidence that plaintiff’s memory was not clear, and he required, or at least received, much assistance from his counsel by leading questions and references to the pleadings to refresh his memory. In directing the verdict for the plaintiff, we think the court committed reversible error.
*464 II.
A more substantial and difficult question is presented by tbe objections made by defendant at tbe outset, persisted in throughout all the proceedings, and raised by the assignments of error, that the complaint does not state a cause of action against the -defendant, and that the evidence is not sufficient to fix a liability upon the city, or sustain a judgment fin any amount in favor of the plaintiff. The action was instituted to recover upon quantum meruit the reasonable value of services, as superintendent of construction of a city hall, alleged to have been performed by the appellee at the instance and request of the defendant, made by and through the chairman of its duly authorized committee on public grounds and buildings,' that portion of the complaint by which liability is sought to be charged being as follows:
“That on, to-wit, the 6th day of May, 1902, at the instance and request of the defendant made by and through the chairman, of its duly authorized and acting committee on Public Grounds and Buildings, the plaintiff commenced work for the defendant as superintendent of the construction of a certain building then in process of construction by the defendant in the City of Colorado Springs and known as the City Hall, and at the instance and request of the defendant and with its acquiescence and approval, by and through its duly authorized com- ■ mittee on Public Grounds and Buildings, and also with the acquiescence and approval of the mayor of said city, and each and every member of the city council of the defendant city, the plaintiff continued in said employment, and in the service of the defendant city, under the instruction of said committee on Public Grounds and Buildings in the capacity of superintendent of construction of said City Hall for the period of two hundred and ninety-five days. That the said work and service so performed by the plaintiff and so accepted, received and *465 approved by the defendant, were reasonably worth the sum of eight dollars ($8) per day. That by reason of the facts herein alleged, the defendant on the 20th day of April, 1903, became, ever since- has been and now is indebted to the plaintiff for said work and services in the snm of two thousand three hundred and sixty dollars ($2,360).”
After its demurrer to the complaint was overruled, the appellant answered, and among other defenses, including the general denial, alleged that the contract of employment upon which suit was brought was ultra vires. The contention made by appellant, the determination of which is decisive of this case, is in effect that the suit is upon an implied contract for the reasonable value of work performed or services rendered in the construction of a work of public improvement, whereas such work can only be done and liability attach to the city by express contract let upon bids. That the complaint upon its face and the evidence offered in support thereof show that the work was not done, or services rendered, under an express contract, nor to the lowest resppnsible bidder, nor after due advertisement; that the employment of the plaintiff, if made,- and the services, if rendered, as alleged by him, were without authority of law. Therefore as to such he was a mere volunteer, and cannot recover against the corporation.
The law governing the liability of municipal corporations of this state in suits upon contracts, express or implied, for services rendered the city was declared by the supreme court in Durango v. Pennington, 8 Colo., 257, 7 Pac., 14. That case has not been overruled nor modified, and hence, so far as applicable to the facts of the case before us, is controlling, and, inasmuch as it is cited by counsel for both sides, it may be regarded as so considered by them. In that case, Mr. Justice Beck, speaking for the court, said:
*466 “We understand the law to be well settled, that when the mode of proceeding in respect to transactions of this nature” (public improvements) “is prescribed by law, or in the charter of a municipal corporation, such mode must be strictly pursued by the corporation in relation to the awarding and making of contracts, or no liability is thereby incurred. The party dealing with a municipal body is bound to see to it that all mandatory provisions of the law are complied with, and if he neglects such precaution he becomes a mere volunteer, and must suffer the consequences. — Zottman v. San Francisco, 20 Cal., 96 [81 Am. Dec., 96]; Brady v. Mayor, 20 N. Y., 312; Murphy v. City of Louisville, 9 Bush [Ky.], 189; Stechert v. City of Fast Saginaw, 22 Mich., 104.
“It follows from the foregoing rules of decision, that if the defendant corporation was limited by law to a specified mode of contracting indebtedness for the making of street improvements, and such mode was not observed in the awarding and making of the contract in question, nor in its subsequent ratification, that no recovery thereon can be had against the corporation. In such case it matters not that the work may have been well done, and that the defendant may have the full benefit thereof.”
See also Sullivan v. Leadville, 11 Colo., 483, 18 Pac., 736.
At the time the opinion in the case of Durango v. Pennington, supra, was delivered, there was no statute which required that a public improvement the expense of which was not to be assessed on the owners of adjoining property must be let upon contract. Since that time the following statute has been enacted, and has ever since been in full force and effect:
“All work done by the city in the construction of works of public improvement of every kind shall be done by contract to the lowest responsible bidder, upon open bids, after ample advertisement.” — Session Laws 1891, *467 p. 383, section 16; section 4442b, Mills’ Ann. Stats.; section 7255, 1912 edition; section 6579, E. S. 1908.
Section 4445, Mills’ Ann. Stats., also provides:
“On the passage or adoption of every by-law or ordinance, and every resolution or order to enter into contract by any council or board of trustees of any municipal corporation, the yeas and nays shall be called and recorded; and to pass or adopt * * * any such resolution or order, a concurrence of a majority of the whole number of members elected to the council or board of trustees shall be required.”
In addition to the foregoing statutory provisions, the following ordinance of the City of Colorado Springs was offered in evidence, to-wit:
“Except the ordinary expenditures for the maintenance and repairs in the different departments, no purchase, work or business, involving the expense of more than three hundred ($300.00) dollars, shall be made, entered or carried out,.without a vote of the city council.”
There is no room for controversy upon the question that the building of a city hall constituted the construction of a work of public improvement for such city, and, assuming for the present that services rendered as superintendent of construction -of said building is a part of the work done by the city in such construction, we think that the services rendered by plaintiff for which he now seeks to impose a liability upon the defendant city comes clearly and fully within the provisions of the sections of the statute hereinbefore quoted, and within the law as announced in Durango v. Pennington, supra; that the work done or services rendered by the plaintiff must have been done by express contract between him and the city, and that as a condition precedent to making such contract it must have been awarded to him as the lowest responsible bidder upon open bids after advertisement; and that the resolution or order awarding such contract *468 must have been made in the manner provided in section 4445, supra. The statute is mandatory; compliance with its provisions is jurisdictional,' and cannot be waived by the city council. The contract contemplated by the statute is an express contract, not one in which the services to be performed, the term of employment, or compensation to be paid, and other matters, are left to .implication. — Smith Canal Co. v. Denver, 20 Colo., 84, 36 Pac., 844; 2 Dill. Munic. Corp. (5th Ed.), sec. 796; Mulnix, State Treas., v. Mutual Benefit Life Ins. Co., 23 Colo., 71, 46 Pac., 123, 33 L. R. A., 827. To otherwise hold would operate to defeat the express will of the legislature and the object of the statute.
The evidence in this case clearly shows that no express contract was entered into. Plaintiff testified that one of the aldermen, supposed by him to be a member of the committee on public grounds and public buildings, directed him to begin the superintending or supervising of work that was about to be commenced by the general contractor for the construction of such building, and to see that the interest of the city was protected in that respect, and further stated that such alderman had mentioned the matter to the council the night before; that upon such request the plaintiff commenced his service and continued for a period of two hundred and ninety-five days, during which time he frequently reported to the committee on public buildings, to various members of the city council, including the mayor, and to the architect of the building. No term of service nor compensation was at any time mentioned; and- no claim made that any contract, written or oral, was entered into, or that any order was made by the city council, as such, awarding the contract to the plaintiff or directing him to perform any services with regard to said building, or that bids for such work were ever called for or advertised, or that ■any order was made or action taken by the city council *469 recognizing tlie employment of the plaintiff, or that he was performing services for the city, except a motion made after the alleged services had been performed, accepting the resignation of the plaintiff as building inspector, in which was included his resignation from employment as superintendent of construction. This motion falls far short of such ratification of the alleged employment as is required. The ratification of an invalid contract, where an express contract is necessary to bind a municipal corporation in the first instance, and- where the contract is required to be made in a specified manner, requires the same formalities necessary to be complied with’ in the making of a valid contract. Durango v. Pennington, supra. No such ratification is set. forth in the complaint, nor shown by the evidence, and it seems clear that the plaintiff is bound by the law as declared by the supreme court, that in dealing with a municipal body he is bound to see to it that all mandatory provisions of the law are complied with, and if he neglects such precaution he becomes a mere volunteer, and must suffer the consequences, without regard to the fact that his work may have been well done and that the defendant has had the full benefit thereof.
But it is said by appellee that the city did not plead the invalidity of the contract relied upon, and that therefore it must be held to have waived it. We think that where a mandatory statute requires the making of an express contract for work done by the city, the complaint which seeks to recover upon a liability for such work does not state a cause of action unless it shows that it is based upon an express contract. — Sullivan v. Leadville, supra; Nash v. City of St. Paul, 8 Minn., 143, 159 [Gil., 143, 159]; Smith Canal Co v. Denver, supra — that such statutory provision is one which the city has no right to waive before or at the time the contract is made, and ought not to be held to have waived it; then nor thereafter, *470 except by formal ratification, in the absence of an express waiver. Due protection to the interests of the public requires strict application and enforcement by the courts of these statutory provisions.
Sullivan et al. v. City of Leadville, supra, was a suit by contractors to recover from the city for an alleged breach of contract for certain public improvements at a stipulated price to be paid for said work. . The court said that it was incumbent upon plaintiffs to establish by proof the fact that the contract was awarded to the plaintiffs, and that it was also “incumbent upon plaintiffs to establish the further fact that prior to the making of such contract, an appropriation had been made concerning the expense- thereby incurred.- — General Stats., section 3328. If the plaintiffs failed to establish either of these facts, the verdict of the jury should not be disturbed.” If it was incumbent on plaintiffs to prove a prior appropriation, it follows, as a mátter of course, that it was necessary for them to allege it. While the opinion makes no mention of what is stated in the pleadings, the record discloses the fact that the trial court (then presided over by J. C. Helm, later chief justice of the supreme court) held that the complaint must allege the performance of those acts which by the statute are made conditions precedent to the existence of the power of the city to contract, and that the making of an appropriation to meet the liability incurred was a condition precedent to the existence of the power in the city council to make or authorize the contract. This ruling of the trial court supplements and makes clear the language of the supreme court hereinbefore quoted as.to the requisite pleading and proof.
Smith Canal Co. v. Denver, supra, was an action, in the nature of assumpsit upon an implied contract, against the city. In that ease, as in this, the complaint alleged no agreement nor promise as to the price to be paid, and *471 it was contended that upon the facts alleged, the law implies a promise on the part of the city to pay a reasonable price. To this complaint a general demurrer was sustained by the trial court, and its judgment was affirmed. The charter provision there under consideration was that requiring a prior appropriation as a condition precedent to authority of the city to contract. After holding that as a general rule an éxpress contract is required to create a liability against a municipal corporation by contract, and that the charter provision under consideration was mandatory, the court further said, “It is obvious that the legislature intended by this language to protect the city ancf its tax payers against any and all liabilities arising upon contract until the same should be provided for in the mode prescribed by the act itself. ’* * * The district court did not err in sustaining the demurrer.” (In that case it was not urged that the non-existence of an appropriation should have been pleaded as a defense.)
In Mulnix, State Treas., v. Mutual Benefit Life Ins. Co., 23 Colo., 71, 46 Pac., 123, 33 L. R. A., 827, being a suit upon a state warrant, drawn by the state auditor upon the state treasurer, in payment for stationery and other articles furnished to the general assembly and executive departments of the state and used by them, the defense was the illegality of the warrant, said to consist in the fact that a part of the consideration was illegal, because some of the articles furnished were not included in the advertisement, bid or contract as required by law. The constitutional provision involved was this: “All stationery, printing, paper and fuel used in the legislative and other departments of government shall be furnished; * * * and the repairing and furnishing the halls and rooms # * * shall be performed under contract ; to be given to the lowest responsible bidder, below such maximum price and under such regulations as may *472 be prescribed by law.” The act approved February 12, 1879, prescribed the method of advertising and awarding contracts. The court, by Mr. Justice Campbell, held that these statutory provisions were mandatory, and said, “Courts are not astute to discover reasons for holding directory, merely, constitutional provisions manifestly intended as salutary checks upon improvident conduct of governmental affairs.” And in speaking of the requirements of the statute that bids must be submitted and the contract let to the lowest responsible bidder, the court quotes from and approves language of the Illinois supreme court in Dement v. Rokker et al., 126 Ill., 174, 19 N. E., 33, as follows: “Plainly, they (meaning such provisions) are intended as distinct and successive safeguards to protect the state against imposition and extortion. Where the provision of the statute is the essence of the thing required to be done, and by which jurisdiction to do it is obtained, it is held to be mandatory.” The supreme court in said case also holds that the state could not be made liable as upon an implied contract or quantum meruit, even though goods had been received and used, when the prescribed mode of contracting was not observed, and that the contract was ultra vires, because executed in express violation of the law, and, being so, was not susceptible of ratification, and the state could not be held liable either upon implied contract or quantum meruit. That case may be regarded as conclusive of several questions in‘this case, namely, (1) that the statute involved is mandatory; (2) that no liability could be incurred except by express contract; (3) that such contract could not be made without bids after advertisement; (4) that suit upon implied contract or quantum meruit does not lie, and (5) that this court should not be astute to distort the ordinary meaning of the language of a statute so as to exclude the work of superintending, when the legislation includes all work.
*473 We think the complaint did not state a good cause of action, although it might be held good as to any work performed where the statute does not require an express contract. Evidently there was no intention on the part of the city, in pleading its defense, to waive compliance with the statute. The answer alleged that the contract sued on was ultra vires. The term ultra vires, strictly speaking, has reference to contracts which the city may not under any circumstances enter into, but in a less restricted sense it has reference to contracts entered into without compliance with the statutory provisions requisite to confer power upon the city to make the contract, and as such the plea of ultra vires raised the question of the authority of the city to make the contract or incur the liability. Furthermore, objections were at all times made to the introduction of any evidence under the complaint. It is also urged that the defendant was required to prove non-conformity with the terms of the statute. This contention is answered by our holding that the complaint must declare upon an express contract. But if proof thereof was necessary, it clearly appears from the plaintiff’s complaint, and his own evidence in support thereof that the law was not complied with. This obviates the necessity of proof by defendant.
It is further urged that if it be conceded that all ordinary work done in the construction of the city hall must have been let by express contract after competitive bids, the services performed by the plaintiff, being of a skilled, technical or professional nature, are not covered by the terms of the statute; that the right of selection by the city council in the exercis^ of its discretion in the employment of a competent superintendent would be interfered with if the statute as to competitive bidding is made applicable thereto. We know of no authorities which go so far as to hold, or intimate, that the requirements as to an express contract do not apply with equal *474 force and reason to technical or professional services. There are authorities sustaining appellee’s contention, but we are not in accord either with the contention or with such authorities as sustain it. In the democracy of labor there are no privileged classes to whiqh exemption from obedience to the law is extended, or from which its protection is withdrawn. The legislature has created no aristocracy among working men, and the courts should not do so. Time was when there was a distinction made between the workman whose labor was chiefly manual, and the workman whose labor was chiefly mental, and this distinction was recognized by the courts in the application of laws pertaining to mechanics’ liens. That distinction has been abolished by statute. We think that contemporary legislation on cognate matters may be appealed to, to sustain our view that under the laws of this state, all labor and all laborers are upon the common plane, with equal rights, duties and liabilities. Prior to 1889 the mechanics ’ lien act made no reference to skilled or professional labor, and therefore it was doubted whether the services performed by architects and superintendents were included within the class of labor to which liens were given; but by the acts of 1889, 1893, and subsequent acts, it is clearly and definitely provided that all labor and all workmen, including architects, and others engaged in work of superintending, shall be entitled to liens. And under the attachment laws of 1887 attorneys at law have been held entitled to an attachment to collect their fees for services rendered. — Bogert v. Adams, 8 Colo. App., 185, 45 Pac., 235. The act of 1891 under consideration in this case, declaring that all work done in the construction of works of public improvement shall be done by contract awarded upon competitive bids, etc., was passed soon after the decision in Durango v. Pennington, supra, and may have been inspired by a knowledge of that decision; but it may well be said that the legisla *475 ture had in contemplation its contemporaneous acts placing all work upon a common level before the law. There is no apparent necessity for exempting superintendents of construction from the statutory rule. It is a matter of common knowledge among people who deal in such matters that architects and engineers of unquestioned ability and high reputation frequently, if not usually, offer their services as superintendents of construction — upon a percentage of the contract price, or upon some other basis. It is not claimed that plaintiff was an engineer or architect, or possessed technical skill not possessed by other experienced contractors and builders. It is shown by evidence introduced by plaintiff that there were a number of persons of like qualifications with himself in the city of Colorado Springs, some of whom at least had entered into competitive bids for contracts on the same building. Furthermore, a broad discretion in the selection among bidders is included within a reasonable construction of the statute as to “responsible” bidders. The word “responsible” is not limited to the meaning of' pecuniary liability or responsibility, but includes as well skill, experience and integrity; and if the character of the work be such that only one person can be found competent to perform the services, there is no reason to believe that the courts will interfere with the exercise in good faith by a city council of its selection upon the bids submitted. — City of Denver v. Dumars, 33 Colo., 94, 80 Pac., 314. However that may be, if the interests of 'the public require a different provision, it is a matter for the legislature, and not for the courts. When the legislature has by its positive enactment declared the public policy upon a matter of public concern, such act is not subject to review by the courts, and we think the legislature has by mandatory statute declared as the public policy of this state that all work in the construction of public improvements, without reference to its character, *476 shall be by express contract,, upon open bids, and that the superintending of the construction of a public building as in this case is not an exception. Of course, this statute has no application to' such work as is performed by salaried officers under a statute or charter which provides that such officers as the city engineer or his assistants and deputies shall supervise and superintend. The statutes and charters are co-existent, and not conflicting.
In support of the judgment of the trial court, the doctrine of equitable estoppel is invoked by the appellee upon the ground that the municipality and the general power of contracting for the services rendered if contracted for in a proper manner, and therefore, the labor having been furnished to the appellant, and induced by positive acts of some of the municipal officers, the municipality should be estopped from denying its liability, or that the contract has been properly made, although in fact made in a manner not authorized. This contention is supported by respectable authorities, and seems, to be the established doctrine of the state of Illinois. That doctrine is contrary to the rule as laid down in Durango v. Pennington, Sullivan v. Leadville, Smith Canal Co. v. Denver, and Mulnix, State Treas., v. Mutual Benefit Life Insurance Co., supra. It ought not to prevail as against the positive provisions of statutes such as those involved in this case, and to apply it here would amount to a judicial repeal of the statute itself. It would throw down the barriers which the legislature had raised against favoritism, peculation, graft and fraud, and permit a willing city council, and a no less willing contractor, to ignore the statutory safeguards by entering into secret collusive contracts or understandings without competition, or publicity as to terms, and permit a recovery upon no other ground than that labor had been performed or services rendered from which the city has received some *477 benefit. The statute was not made for tbe benefit of tbe city council, nor of -contractors, but for tbe protection of tbe public against both. Upon tbe general character and effect of such statutes we quote and agree, with the following authorities:
“A provision in a charter, statute, or ordinance requiring a contract to be let by competitive bidding is mandatory, and unless complied with, the contract is void.” — 28 Cyc., 1025, and cases cited.
“It cannot be doubted that the true intent of the act * * * and the ordinances passed in pursuance thereof, regulating the awarding of public contracts, is to secure to the city the benefit and advantage of fair and just competition between bidders, and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms.” — Mazet v. Pittsburgh, 137 Pa. St., 548, at page 561, 20 At., 693, 697.
“We think there can be no doubt that the true intent and purpose of section 4 of chapter 10, supra, was to secure economy and protect the public from collusive contracts or favoritism or fraud, and to promote actual, honest, effective competition.” — Reed v. Rockiff-Gibson Const. Co., 25 Okla., 633, 107 Pac., 168, 138 Am. St., 937.
“The reason for such enactments as the one in question is, in the main, to preclude public officers from making contracts in such a way as to enable them to sacrifice the public interests to satisfy favoritism, mere improvidence, or to a corrupt desire for private gain. There is no better safeguard against infidelity of officials in that respect, yet discovered, than to require municipal contracts to be publicly let, the scope of the service to be performed and the terms of payment being so definitely mapped out in advance as to enable persons experienced in respect thereto to estimate with reasonable certainty the actual cost thereof, and to require the award to be made without change in such service or *478 terms.” — Chippewa Bridge Co. v. Durand, 122 Wis., 85, at p. 93, 99 N. W., 603, 606, 106 Am. St., 931.
“The city itself, much less any of its subordinate officers, or committee, had no power to make an agreement to pay for such work on the rule of quantum meruit. We may regret that the plaintiff acted unadvisedly, but to assist him in this hard case would lay the axe at the root of the system which imperatively requires all municipal work of this character to be done by the lowest and best bidder.” — Addis v. City of Pittsburgh, 85 Pa. St., 379 (referring to an action upon qitantum meruit in contravention of an ordinance).
In People v. Flagg, 17 N. Y., 584, at page 591, Roosevelt, Justice, in speaking of the probable effect of ignoring the statutory provision requiring an express contract on competitive bids, said:
“If this doctrine were to prevail, what would become of the restraints of legislation? The members and officers of the corporation would only have to tell their favorites to go on, without law, and then, by assuming the work, make the obligation binding, not on themselves, but on the tax payers. If contracts, without competition, were thus to be implied, how many express contracts would ever be awarded to ‘lowest bidders’? Even as the law stands, there is abundant evasion. * * * Should the doctrine of implied contracts be also sanctioned, the statute, in all its parts, would soon become a dead letter, and the correction of abuses, however gross, to any degree, however limited, be regarded as a mere utopian dream. ”
In the last named case, Comstock, Justice, took the opposite view from that expressed by Roosevelt, Justice, and, commenting on the meaning and scope of the word “work,” said, “It would be an unreasonable and mischievous construction of the statute to apply it to services which require in their proper performance scientific *479 knowledge or professional skill.” That case is not cited as authority, as the court reserved its opinion upon the question as to whether the services were of such a character as come within the statute requiring advertisement, and contract with the lowest bidder, putting the judgment upon other grounds, but to cite with approval the reasoning of Mr. Justice Roosevelt.
"While in this case to apply the strict letter of the law may work a hardship upon the plaintiff, it is far better that one man should suffer pecuniary loss than that a rule should be adopted destructive of statutory safeguards, the necessity of which for the protection of the public was never greater than at the present time. If once it becomes thoroughly understood that violation of these statutes will not be tolerated or condoned by the courts, litigation of the kind now before the court will be rare.
Holding the foregoing views, the judgment appealed from must be reversed.

Reversed.

Bell, J., and Htjrlbdt, J., specially concur.