MULNIX, STATE TREASURER, v. THE MUTUAL BENEFIT LIFE INSURANCE COMPANY.

1. CONTRACTS—PUBLIC AGENTS.

Every person who seeks to obtain through his dealings with an officer the obligations of the public, must, at his peril, ascertain that the proposed act is within the scope of authority which the law has conferred upon the officer.

2. CONSTITUTIONAL LAW—CONSTRUCTION.

It seems the provisions of the constitution manifestly intended as salutary checks upon improvident conduct of governmental affairs should not be held as merely directory.

3. SAME—SECRETARY OF STATE, POWER TO CONTRACT—STATUTORY CONSTRUCTION.

The act of February 12, 1889, enacted to carry out the provisions of section 29, article 5, of the constitution, made the secretary of state the purchasing agent for the three great departments, and made it his duty to procure suitable apartments for them and to have the same supplied with furniture, etc. It also provided that he should advertise for bids for the articles required and let the contract therefor to the lowest responsible bidder, and gave him power to reject any and all bids if he should deem it for the best interests of the state so to do. *Held,* that the statute is exclusive and mandatory, that the power of the secretary to contract for such supplies must be exercised in the manner prescribed by the statute, and that he has no power to bind the state by purchases made in open market.

4. SAME.

The only power which the secretary of state has to contract in behalf of the state is derived from the statute.

5. SAME—QUANTUM MERUIT.

The state is not bound as upon a *quantum meruit* for goods the contract for which was made in violation of a statute.

*Error to the District Court of Arapahoe County.*

THE ATTORNEY GENERAL, Mr. H. T. SALE and Mr. W. J. THOMAS, for plaintiff in error.

Mr. F. A. WILLIAMS, Mr. A. M. STEVENSON and Mr. A. S. BLAKE, for defendant in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The Insurance Company, as petitioner, by mandamus, seeks to enforce the payment of a state warrant drawn by the state auditor upon the state treasurer. Prior to the convening of the seventh general assembly the secretary of state, in pursuance of the statute, by an advertisement duly made, invited sealed proposals for stationery and certain other articles required by said general assembly and the executive departments of state for the two years commencing on the 2d of January, 1889.

Lawrence & Co. tendered a bid which, upon investigation, was accepted by the secretary of state, and a contract was duly entered into with them for supplying such articles as were covered by their bid. Thereafter they furnished stationery and certain other articles to the general assembly and to the various executive departments, which were received and used by the state. The statement of accounts for the same were rendered to the then auditor of state, and by him audited, settled, approved and allowed, and thereupon the auditor drew upon the treasurer the warrant which is the subject-matter of the controversy here, the same being on account for the articles so furnished. This warrant, before the beginning of this proceeding, was duly indorsed to the petitioner, and presented by it to the then treasurer of the state, who refused payment.

An appropriation has been duly made by the general assembly for the payment of this claim, and the money to pay the warrant was in the state treasury at the time of its presentation, and is still there.

The treasurer made answer to the petition, from which,

and the brief of the attorney general, it appears that the sole
defense relied upon is the illegality of the warrant, which
illegality is said to consist in the fact that a part of the con-
sideration therefor was illegal in this, that some of the arti-
cles furnished to the general assembly by the petitioner's
assignors were not included in the advertisement, in their
bid or contract, as is required by law in such cases. The
court below awarded the peremptory writ, to which judg-
ment the treasurer prosecutes his writ of error.

The constitutional and statutory provisions involved in
this controversy, and which are referred to in the opinion,
are section 29 of article 5 of the constitution, the act approved
February 12, 1879 (Session Laws 1879, p. 61), being sec-
tions 1338, 1339, 1340, 1341 and 1343 of the General Stat-
utes of 1883, which are the same as sections 1777, 1778,
1779, 1780 and 1782 of Mills' Annotated Statutes, and the
act of 1885 (Session Laws of 1885, p. 49).

Section 29 of article 5 in substance provides that " All
stationery, printing, paper and fuel used in the legislative and
other departments of government, shall be furnished; * * *
and the repairing and furnishing the halls and rooms * * *
shall be performed under contract; to be given to the lowest
responsible bidder, below such maximum price and under
such regulations as may be prescribed by law."

In carrying out this provision the general assembly by the
act of 1879 makes the secretary of state the purchasing agent
for the three great departments of state, and makes it his
duty to procure suitable apartments for them, and to have
the same supplied with furniture and such other articles as
may be required. Fifty days immediately preceding each
regular session of the general assembly he is directed to adver-
tise for four weeks successively for bids for the articles re-
quired, and he is given the power to reject any or all bids,
if he deem it for the best interests of the state to do so. Spe-
cific provisions for opening the bids and awarding contracts
thereunder are made, and the maximum prices fixed below
which all bids must come.

The contention of plaintiff in error is that section 29 of article 5 is mandatory, not only to the general assembly, but, *per se*, operates absolutely to prohibit and make void any contract of purchase of articles enumerated therein, unless furnished under a contract let to the lowest responsible bidder. But, if not, still the general assembly has passed a law carrying into effect this section whose provisions are mandatory upon the secretary of state, and they prohibit him, as the purchasing agent, from purchasing supplies except from such bidder.

Upon the other hand, the defendant in error contends that this section is mandatory only to the general assembly, is not self-executing, and, until given life by the legislature, is dormant; and as the statute referred to is itself, by a fair construction, only directory or advisory in its nature, the secretary of state may altogether omit to advertise for bids, or, if he does and rejects them, or if he omits from his advertisement some necessary article or articles, or if no bids are offered by responsible bidders, nevertheless he may go into the open market and purchase supplies, and thus impose a valid obligation upon the state to pay for them.

There is no charge in these pleadings of fraudulent conduct on the part of the secretary of state in advertising for bids, or of fraud in the bid itself, or in the auditing of the account. The sole defense is that some of the articles furnished and received and used by the state were not embraced in the advertisement, or included in the bid of petitioner's assignors, or covered by their contract, but were purchased by the secretary of state in the open market.

This is conceded by the petitioner, and upon this fact the claim is made, on the one side, that this purchase was without authority of law, and *ultra vires* the secretary of state, while upon the other side the contention is that he had the implied power to make this purchase.

The parties agree that the warrant does not possess the qualities of negotiable paper, but is open to the same defenses as though the proceeding were to compel the auditor to allow

the account and draw his warrant therefor. It is also agreed that if any part of the consideration is illegal, the warrant is void.

The rule is fundamental that "in cases of public agents, the government, or other public authority, is not bound, unless it manifestly appears that the agent is acting within the scope of his authority, or he is held out as having authority to do the act." Story on Agency (8th ed.), sec. 307 *a*; Mechem on Public Officers, sec. 834; *Whiteside et al. v. United States*, 93 U. S. 247; *Hawkins v. United States*, 96 U. S. 689; *Durango v. Pennington*, 8 Colo. 257; *Sullivan v. City of Leadville*, 11 Colo. 483.

As expressed in another form, it is said, "Every person who seeks to obtain, through his dealings with the officer, the obligation of the public, must, at his peril, ascertain that the proposed act is within the scope of the authority which the law has conferred upon the officer." Mechem on Public Officers, sec. 829, *et seq.*, citing *The Floyd Acceptances*, 7 Wall. 666, and other cases.

Whether section 29 is mandatory only to the legislature, and is not self-executing, or whether, without supplemental legislation, it is a positive and effective prohibition against the purchase of supplies except under contract to the lowest bidder, is not necessarily before us. The authorities cited *pro* and *con*, among others, are *Groves et al. v. Slaughter*, 15 Pet. 449 (14 Curtis, U. S. 137); *Spinney v. Griffith*, 98 Cal. 149; *Speidel & Co. v. Schlosser et al.*, 13 W. Va. 686; Cooley on Const. Limitations, (5th ed.), pp. 98–102; *In re Breene*, 14 Colo. 401; *Brien v. Williamson*, 7 Howard (Miss.), 14; *Bass v. The Mayor*, 10 Tenn. 421; *Law v. The People*, 87 Ill. 385; 3 Am. & Eng. Ency. of Law, 680; *Yerger v. Rains*, 4 Humphrey (Tenn.), 259.

In passing, we may, however, with propriety say that courts are not astute to discover reasons for holding directory, merely, constitutional provisions manifestly intended as salutary checks upon improvident conduct of governmental affairs.

Important as this question might otherwise be, in this case it is not controlling, for our general assembly in 1879 (Session Laws, 1879, p. 61; G. S. 1883, *supra*), recognizing its mandate, gave life to this constitutional provision. By this act it is conceded that an attempt, at least, was made on the part of the general assembly to carry out the constitutional provision. It expressly directs the secretary of state to advertise for bids for all supplies needed, and to let the contract therefor to the lowest responsible bidder, and fixes the maximum price below which the bids must come.

But we are asked to declare this statute directory only, and the argument is this: Were there no other provisions than those prescribing the mode of entering into a contract, it might fairly be said that all other methods are prohibited; but section 3 of the act empowers the secretary of state to reject all bids, and section 6 makes it his duty to furnish apartments for the legislature, and supply it with all necessary articles. Given this duty, he must necessarily have the authority to perform it. If, therefore, he advertise for bids and none are tendered, and he has no time to readvertise, or if he reject all bids offered, or if, for a good excuse, he fails to advertise, or does so, and fails to include all necessary articles in his advertisement, or in the contract, if made, still, as his duty requires that he furnish necessary supplies, this statute impliedly gives him the discretion either to depart from the statutory method of securing supplies, or, upon a failure, for any of the reasons just given, to obtain, under the prescribed method, all or any of the supplies needed, he may go into the open market and buy them. If this be not so, we are told that the " wheels of government will be blocked," for these departments cannot run unless supplied with certain articles for their use. The secretary of state is required to furnish them; but if he be confined to the statutory method in securing them, and that method prove ineffectual, the departments must stop, and the functions of government will be paralyzed.

There is force in this argument, at least in furnishing a

reason why such a contingency should have been provided for by the constitutional convention; but we think it not conclusive of the question before us. It is too plain for argument that the object of this constitutional provision was to protect the state against extortion and oppression from unscrupulous contractors, and, as far as possible, to withdraw from its own officers the opportunity and power to assist in such schemes. When the act of 1879 was passed, it was in obedience to the command of the constitution, and it provided in detail the necessary regulations for effectuating these constitutional safeguards. These regulations, if in harmony with the constitution, we hold to be mandatory, as much so as if expressed in the constitution itself. If the general assembly had expressly enacted that the secretary of state, in certain contingencies, might disregard the method of obtaining supplies enjoined by the constitution and go into the open market and buy them, such a provision would be repugnant to the constitution.

It follows that the power to reject bids, or the duty to supply the departments of state with articles necessary for their use, which this act contains, does not carry with it, nor do both combined carry, by implication, the power to disregard both the statute and the constitution, or confer the power to go into the open market and buy. The duty to secure these things might, by implication, give authority to buy in any reasonable way, were it not that this power is otherwise limited by the constitution and the statute; and this method, being the essential thing to protect the state, must be held to be exclusive and mandatory. The various other arguments adduced in support of the contrary rule do not address themselves to us with any degree of force.

That just as satisfactory results may be accomplished if the agent buy in the open market is no reason why he should do so, when his only authority to buy at all limits him to a different method. Nor is the argument convincing that the secretary of state ought to be vested with the power thus to buy in case no bids are received, or in case he rejects all bids.

The fact that the wheels of government may be blocked if the departments of state have not the necessary articles with which to do their work may be persuasive to induce the people to change their constitution, and the general assembly to modify the statutes, but when advanced by one who makes with the public official a contract which he knows is beyond the latter's power to make, it is unavailing to secure from a court its enforcement.

So, too, the argument that the credit of the state will be impaired if its outstanding warrants are not paid, may appeal to us as citizens, but it is without merit as a reason why the court should override the plain provisions of the constitution and statutes in its endeavor to protect the public credit.    A sufficient reply to all such arguments is that the persons who furnished these articles to the state knew, when they were furnished, that the secretary had no power to purchase them and bind the state.    An additional reason why these safeguards should be rigidly adhered to and enforced, outweighing all considerations of inconvenience and imaginary paralysis of the functions of government, is the opportunities for corruption which any other rule would afford.

A single illustration will show this.    If, without advertising for bids, the secretary of state has the power to purchase one of the articles required by the state, upon principle he could altogether neglect or refuse to advertise, or omit from his advertisement all but one of the many necessary articles, and then go into the open market and buy them, and pay any price he saw fit to offer, and so bind the state.    To give a construction to these statutory and constitutional requirements which would permit of this would be practically to annul and break down all of the safeguards which the people and their representatives deemed necessary to erect to protect the interests of the state.

The case of *Dement et al. v. Rokker et al.*, 126 Ill. 174, is in point.    Under a constitution which directed that the general assembly should provide by law that certain printing, etc.. should be let by contract to the lowest responsible bidder,

the general assembly of that state passed an act to carry into
execution this section, and constituted certain state officials
commissioners of state contracts.  In pursuance of this act
these commissioners advertised for bids and awarded a con-
tract to the lowest responsible bidders.  The latter did the
work called for by the contract, but the commissioners re-
fused to certify their account because they secured their con-
tract by an unlawful conspiracy to prevent competition.  The
court upheld this refusal.  While this contract was held void
because of the fraudulent act of the bidders, the court, by
Scholfield, J., in discussing the power of the commissioners
to bind the state, says : " The law requires that every prereq-
uisite to the exercise of such a power, as stated in the stat-
ute, must actually precede its exercise. * * * It would,
therefore, seem clear that, under the authorities previously
referred to, an indispensable condition to their power (the
power of the commissioners) to contract is, that there shall
be a public letting in which there is entire freedom of com-
petition. * * * They can no more contract with one who is
not the lowest responsible bidder, *than they can contract with-
out advertising for bids.*"

The court also held that inasmuch as the only power of
these commissioners to contract was that derived from the
statute, contracts made in violation of its provisions were
void, although the statute itself did not expressly so declare.
The same principle applies here.  The secretary of state has
no inherent power to make contracts, or buy goods, that
binds the state.  The only power to contract which he has
is derived from the statute, and it is incumbent upon one
seeking to bind the state through a contract with him to see
to it that the method of contracting prescribed by the statute
is observed.

In reply to the argument made in that case, as was made
in the case at bar, that there was no necessity for a strict
observance of the requirements of the statute, because the
interests of the state were protected by a provision that the
contract must be approved by the governor and attorney

general, and must be less than the maximum rate fixed by the statute, the court says : " Plainly, they [meaning such provisions] are intended as distinct and successive safeguards to protect the state against imposition and extortion. Where the provision of the statute is the *essence* of the thing required to be done, and by which jurisdiction to do it is obtained, it is held to be *mandatory*."

The claim is further made that the state has had the benefit of the goods purchased, and should be liable, as under an implied contract, or upon a *quantum meruit.* It has been held that a municipal corporation may be bound upon an implied contract made by its agent. Such contract, however, must be within the scope of the corporate powers, and must not be one which the charter or law governing the corporation requires should be made in a particular way or manner.

So, also, a corporation may be liable upon a *quantum meruit* the same as an individual, when it has received and used goods purchased, when no statute forbids or limits to a certain method the exercise of its power to make a contract therefor. See the authorities already cited, and in addition *McDonald v. Mayor,* 68 N. Y. 23 ; *Wells v. Town of Salina,* 119 N. Y. 280 ; *Kramrath v. City of Albany,* 127 N. Y. 575.

If this principle is applicable to the state, even if a suit to enforce its liability was permissible, the case at bar does not fall within it, for the prescribed mode of contracting for the goods was not observed, and even if contracts of purchase, when made in the prescribed way, are within the scope of the officer's authority, this contract was *ultra vires* because executed by him in express violation of the law. Being so, it is not susceptible of ratification, no implied liability arises, nor is the state bound upon a *quantum meruit,* in these, proceedings.

Thus far we have not noticed the act of 1885. The title of that act is : " An Act to Provide for the Filing of Duplicate Contracts Pertaining to the State Government, and to Provide for Auditing Accounts Thereunder." This act was under consideration by this court in the case of *Miller v.*

*Edwards*, 8 Colo. 528. It was there said: "Authority to officers, not previously empowered so to do, to purchase supplies, and thus incur debts for or on behalf of the state government, or a department thereof, is certainly not clearly expressed in the foregoing title. Nor can it, in our judgment, be considered germane to the subject therein mentioned." For the same reason it may be said that authority to the secretary of state, if any such there be in this act, to make contracts without advertising for bids, is not within the title, and if it were, such authority would be in violation of section 29 of article 5. This act adds nothing to the power conferred upon the secretary of state by the act of 1879.

For the foregoing reasons the judgment of the district court is reversed and the cause remanded with directions to dismiss the proceeding.

*Reversed.*