## No. 11,494.

PEOPLE TO THE USE OF THE MINE OWNERS' ASSOCIATION
v. WHITE, ET AL.

Decided April 11, 1927.   Rehearing denied May 2, 1927.

Action to recover for alleged misappropriation of public funds.   Judgment for plaintiff.

### Modified and Affirmed.

1. APPEAL AND ERROR—*Pleading—Amendment—Harmless Error.* Refusal of the court to strike amended answers as contradicting admissions made in the original, held not prejudicial where the trial court subsequently ruled with the plaintiff as to the allegations amended.

2. COUNTIES—*County Clerk—Fees—Record.* A county clerk and surety on his official bond, held estopped to deny that he is chargeable with fees collected as shown by his records.

3. *County Clerk—Traveling Expenses.* A county clerk is not entitled to traveling expenses incurred on county business in the absence of statutory authority for their allowance.

4. *County Clerk.* In an action against a county clerk and his surety for alleged misappropriation of public funds, clerk held liable for unexplained . balance collected and not shown to have been paid to the county.

5. *County Clerk—Supplies—Postage Stamps.* The purchase of postage stamps for the use of a county does not come within the section of the statute requiring competitive bids for furnishing county supplies.

6. *Purchase of Stamps by Clerk—Ratification.* A board of county commissioners having power to purchase postage stamps, has power to ratify their purchase by the county clerk, but the ratification must be with the same formality as is required in case the board itself made the purchase.

7. *Commissioners—Delegation of Powers.* County commissioners cannot delegate to the county clerk the duty and power to determine how many postage stamps should be purchased for use of the county.

8.      *County Clerk—Estoppel.*   Although  stamps  purchased  by  the
county clerk are used for the benefit of the county, the latter is not
estopped to deny liability for the amount expended for their purchase.

9.      *County Clerk—Fees—Accounting.*   A county clerk is chargeable
for warrants issued to him, and also with the amounts received as
disclosed by his fee book, and the burden is upon him to show that
he has properly accounted for the same.

10.  APPEAL AND ERROR—*Fact Findings.*   Fact findings of the trial court
will not be disturbed on review, there being no reliable evidence
opposed to, or in conflict therewith.

11.  COUNTIES—*County Clerk—Fees.*   The items of fees disclosed by a
county clerk's record whether earned and collected, or earned and
not collected, must be accounted for by the clerk.

*Error to the District Court of El Paso County, Hon.
Arthur Cornforth, Judge.*

Mr. JOHN E. LITTLE, Mr. T. C. TURNER, for plaintiff
in error.

Mr. L. WARD BANNISTER, Mr. S. M. JANUARY, for de-
fendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

THIS is an action by the people to the use of the Mine
Owners' Association, suing as a taxpayer of Teller coun-
ty in its own behalf and of other taxpayers similarly sit-
uated, against John H. White, a former county clerk
and recorder of the county, and the Fidelity and Deposit
Company of Maryland, a corporation, as surety on his
official bond.   The object is to secure a judgment in the
sum of $3,937.56, which the complaint says the defend-
ant clerk fraudulently and wilfully misappropriated to
his own use, the same being public funds.   There was a

judgment for the plaintiff in the sum of $124 and costs and the plaintiff is here with its writ of error. Defendants assign cross-errors. Other relief than the money judgment, in the nature of a body judgment against the clerk and forfeiture of his office, were prayed, but such questions are not involved in this review. Caustic criticism is made by counsel for plaintiff in error of the attitude and conduct of the county commissioners of the county and of their county attorney, who was also the local attorney at Cripple Creek of the defendant surety company, the point being that the appearance of the county attorney for the defendants is inconsistent with his duty as attorney for the board of commissioners, who should have assisted the plaintiff rather than the defendants in the action. The district court was, we think, in the light of the record, better able than are we to pass upon this ethical question and it seems its view does not coincide with that of plaintiff. The board consented to, or acquiesced in, the appearance of their attorney for the surety company defendant, and he later withdrew from the case.

1. The first assignment is that prejudicial error was committed by the trial court in permitting the county clerk and the surety to file separate amended answers in which, and without making any showing therefor, they contradicted certain admissions that they made in their original joint answer. Technically the plaintiff in error may be right in its position, with the qualification that, in the view taken by the trial court, hereinafter referred to, and which we think was right, it suffered no injury. The specific contention, as to this assignment is that, in their joint answer there was an allegation that the moneys described in the complaint belonged to defendant White, and not to Teller county or to anyone else than the defendant White, while each of the separate answers contradicts these admissions. The plaintiff, having moved to strike the separate answers from the files, and the court having denied the motion, prejudicial error is said

to have resulted. Assuming that plaintiff is right in its interpretation, we think it may not now complain. Before the introduction of testimony plaintiff renewed this objection in moving for judgment on the pleadings upon the same grounds it urged in objection to the amended answers. We might dispose of this assignment with the suggestion that the right thus to amend rests largely in the discretion of the trial court. A better way is to say that no harm was done. If there was any prejudice at all to the plaintiff it is because, on account of the later denials, it was compelled to prove certain allegations of its complaint, which the defendants had once admitted. But in the trial of the case the court ruled with plaintiff that the defendants would be held to what appears on the face of the books and records of the office which the statute requires to be kept and which were kept. And so the very allegations which are set forth in the complaint were taken by the court, as well as by the parties at the trial, by the plaintiff willingly, and defendants by compulsion, to be true in so far as concerns these books and records.

2. Another contention—really, in another form, the same as the foregoing—is that the defendants are estopped by the record of fees collected as this record was kept by the defendant county clerk. We think plaintiff is correct therein. 28 Cyc. 477, 478. *City of Chicago v. Gage,* 95 Ill. 593, 35 Am. Rep. 182. It has no grievance, however, on this score, for the trial court adopted its own theory. That the trial court enforced this doctrine is apparent for, in passing upon various objections by plaintiff, it said that the defendant county clerk is chargeable on the face of the complaint with the 69 warrants in question and with the amount he received from his fee books. To balance that aggregate amount he must show that he paid the same amount into the county treasury either in cash or by turning back these warrants. So it will be seen that the court adopted the plaintiff's own theory and contention as to the law of the case concern-

ing the effect of the clerk's books and records, hence no possible error could result to the plaintiff by the allowance of the amended answers in the particular noted. Especially is this so, since these amended answers practically state the principal and only complete defense to be that even though the county clerk defendant is estopped to deny the truthfulness of the records and books of his office, he had accounted to the county for all that it was entitled to.

3.    The county warrants, which, or their proceeds, the clerk is charged with having misappropriated to his own use instead of turning over the proceeds to the county, were issued to him by the board of county commissioners on his own vouchers or bills therefor. They purport to be for services performed by him in recording redemptions of real estate in which the county was interested; certain county treasurer's deeds and deeds from individuals to individuals in which the county was also interested; the filing of sheriffs' commissions; taking acknowledgments of deeds in which the county was interested; applications for automobile and fish and game licenses; recording deeds from individuals to the county; making certified copies of soldiers' discharges; issuing of automobile tags for automobiles belonging to the county; making certified copies of records, and various other matters of public interest and for the benefit of the county.

The judgment of $124 was based upon warrants issued by the board of county commissioners to the county clerk, the proceeds of which were appropriated to his own use, for certain traveling expenses which he says he incurred in going about the state on matters of interest and benefit to the county. This ruling is right. To this allowance the defendants have assigned cross-errors, and we dispose of the matter at this place in the opinion, merely saying that these cross-errors are not good and the court below was right in holding that the county was not liable for such expenses. There is no statutory authority for

their allowance. The county commissioners, therefore, were wrong in assuming to pay them.

4. Another item in this account, amounting to $665.04, represents the difference between the sum total of the vouchers or warrants involved in this suit, and the sum total of individual transactions and other corresponding amounts which the defendants were not able to identify affirmatively as having been included in the vouchers and warrants. Mrs. Trevarrow, who made an examination of the books and records of the county, and who was examined as a witness for defendants, was not able to explain this balance. She denominates the various items composing it as "unfound" or "unfounds," while the plaintiff speaks of the sum total as the "Unexplained balance." We think the court should have charged this item to the defendant clerk. This burden generally was rightly put upon him by the trial court. His failure to account for this amount is to be taken against him and not against the county. It should be added to the total amount of the judgment along with the items relating to unexplained balance and stationery. We are impressed that it was an oversight on the part of the trial judge in crediting the clerk with it instead of adding it to the judgment against him.

5. The defendant White purchased postage stamps for use in the offices of the county clerk and recorder, the clerk of the district court and the county superintendent of schools. These purchases amounted to $167.27. His claim therefor was duly presented to the board of county commissioners and allowed at a meeting of the board, and warrants therefor were drawn. The trial court allowed this as a credit to the defendant White, and the plaintiff assigns such ruling as error. Plaintiff relies upon sections 8684 and 8687 of the Compiled Laws. The former makes it the duty of the board of county commissioners to advertise for competitive bids for supplying the county with books, stationery, records, printing, lithographing, and such other supplies as are furnished to

the several officers of the county. Section 8687 is as follows: "No county officer shall be allowed to contract for or purchase any books, stationery, records, printing, lithographing or other supplies of any kind for use in his office and no such supplies shall be procured in any other manner than as provided in this act."

It may also be noted that another section (C. L. § 8694) provides that any county officer "who shall undertake to create any liability against the county, except such as he is by statute required to do shall be personally liable, and shall, together with the sureties upon his official bond be held for such indebtedness."

It is obvious that postage stamps do not come within the section requiring competitive bids. From the fact that the board of county commissioners is the purchasing agent of the county, and that the county clerk has no power to purchase any supplies, and is forbidden to do so, it does not necessarily follow that the court erred in allowing this credit. It is admitted that the board had power to purchase these postage stamps; indeed, the plaintiff's contention is that the sole power to make such purchases resides in the board. The defendant White was county clerk. By virtue of C. L. section 8732, he was also clerk of the board of county commissioners. In purchasing the postage stamps for use in the offices of the clerk and recorder, the clerk of the district court, and the county superintendent of schools, no doubt he was attempting to act for the board, as its clerk. If the board, in advance, had passed a resolution to purchase the stamps, we may fairly assume that the clerical duty of going to the post office and getting the stamps would have been performed, not by the commissioners personally, but by the clerk of the board. The board approved the purchase by allowing, at a board meeting, the defendant White's claim for the amount paid for the stamps. If the board had power to ratify the purchase, it did ratify it, and it did so with the same formality required to authorize the purchase, had it acted in advance thereof.

Did the board have power to ratify? Three of the justices answer this question in the negative; four answer it in the affirmative. The board, having power to make the purchase, has the power to ratify it, but the ratification must be with the same formality as is required in case the board itself made the purchase. *Durango v. Pennington*, 8 Colo. 257, 7 Pac. 14; *Colorado Springs v. Coray*, 25 Colo. App. 460, 139 Pac. 1031. That formality was observed in the present case. In *Morris v. Adams County*, 25 Colo. App. 416, 139 Pac. 582, two county commissioners, without any authorization by the board, and therefore without any authority at all, assumed to employ an attorney in behalf of the county. The court held that the board had authority to ratify the contract, and that upon such ratification the county became liable on the contract. In *Clarke v. Lyon County*, 8 Nev. 181, the district attorney, without any authority to do so, employed another attorney to represent the county in certain litigation. The board of county commissioners had the exclusive power to employ attorneys. Held, that the board had power to ratify such unauthorized employment, and that when so ratified, the contract was binding on the county. In Minnesota a sheriff has no authority to employ counsel in behalf of the county; such authority rests exclusively with the board of county commissioners. In *True v. Board of Commissioners*, 83 Minn. 293, 86 N. W. 102, it was held that an unauthorized employment of counsel by the sheriff, though invalid and not binding on the county, may be ratified by the board, in which event the contract of employment becomes valid and binding.

In the present case the board, of course, could not delegate to the clerk the duty and power to determine how many postage stamps should be purchased for use in the various county offices; the determination of that question is for the board alone. *Board of Commissioners v. News-Dispatch Print & Audit Co.*, 104 Okla. 260, 231 Pac. 250; *Board of Commissioners v. Co-Operative Pub. Co.*, 104

Okla. 262, 231 Pac. 251. When the clerk, without authority, bought the postage stamps for the county, he did so at his peril. If, upon considering his claim for reimbursement, the board had refused to ratify his act in making the purchase, and had disallowed his claim, he would have been without redress. Thus the county has the full protection it is entitled to under the law—the exercise by the board of its judgment and discretion in regard to the number of postage stamps that shall be purchased at the expense of the county. Whether the defendant, in buying the postage stamps, assumed to act as county clerk or as clerk of the board, the result is the same. His unauthorized purchase of stamps for the county officers was ratified, his claim allowed, and warrants therefor drawn by the board.

The right of the defendant White does not depend upon estoppel. The use of the stamps for the benefit of the county gave White no right to enforce his claim on the ground of estoppel. In *Mulnix, State Treasurer v. Life Ins. Co.,* 23 Colo. 71, 46 Pac. 123, 33 L. R. A. 827, the secretary of state purchased certain supplies without having complied with the statute requiring him to advertise for bids. We held that the fact that the state got the benefit of the unauthorized purchase did not make the state liable on quantum meruit. In *Colorado Springs v. Coray,* 25 Colo. App. 460, 139 Pac. 1031, the court held that where a contract was made without advertising for bids as the statute required, no recovery could be had, even though the city obtained the benefits. As the contracts in the Mulnix and Colorado Springs cases could not be made without first advertising for competitive bids, and as ratification requires the same formality as is necessary in the making of a contract, it is evident that there is a practical difficulty in ratifying such contracts. There was no attempt to ratify the contract in either the Mulnix case or the Colorado Springs case. In the latter case the opinion says that a resolution accepting the resignation of the plaintiff did not have the effect to

ratify his unauthorized employment. In that case the court recognized the fact that there could be a ratification, but held that such ratification must be with the required formality. Those two cases, therefore, are in entire accord with the views here expressed. The trial court was right in allowing as a credit to the defendant White the amount paid by him for postage stamps.

The decision of this assignment of error concerning the trial court's allowance for postage stamps is the only question involved in which there is a difference of opinion among the members of this court. The foregoing disposition of the assignment represents the views of the majority on this particular allowance and their opinion, being the opinion of the court as to the same, has been written by Mr. Justice Butler. In the view of the minority the principle involved, as to this postage stamp item, is of such vital importance that they deem it proper at length to express their dissenting views upon it, which are directly antagonistic to the views of the majority. The pertinent statutes have been above copied or summarized. The defendants contend, and their contention in effect is adopted by the majority, that since our statute does not contemplate competitive bids for postage stamps, it is, therefore, necessary for the county clerk to buy them in order properly to discharge the duties of his office and, therefore, he should receive credit for the sum he expended for them. The board of county commissioners is the purchasing agent of the county. County officers are expressly inhibited from contracting or purchasing any supplies for use in their office. The purchase of stamps and of stationery by the county clerk was unauthorized and in clear violation of the express provisions of the statute. The drawing of warrants therefor by the board of county commissioners was illegal. The board of county commissioners had no more power to ratify the illegal act of the county clerk than the county clerk had to commit it. The items are not large in amount. The record, as we read it, is not clear whether

all the stamps and the stationery were used by the clerk in his office. However that may be, the minority are not inclined to put this court's stamp of approval on such illegal acts of county officials. If the county clerk is permitted to buy one dollar's worth of stationery for use in his office he might, by consent of, or connivance with, the county board, be permitted to buy, and without competitive bids, all of the supplies needed by his office during his incumbency. .It may be, as counsel says, that this statute requiring advertisement for competitive bids does not contemplate a bid for the purchase of postage stamps which can be procured but from one source only, and at a fixed price, and in which there can be no competition; but the point is that the county clerk has not authority to purchase any supplies for his office, either postage stamps, or other supplies. They must be purchased by the county commissioners on competitive bids, or, in case of stamps, by the board itself from the national post office. The county board being the purchasing agent it is its duty to buy these postage stamps, as well as other supplies for county officers. It may not delegate this authority to the different county officials. One object in making the board, the purchasing agent is to secure the lowest prices by competitive bids. Another purpose is to enable the board to oversee, and pass upon in the first instance, the necessity for such purchases and to keep track of the expenditures for the various county supplies that are asked for. For the amount of these two items the minority of the court think the county clerk is not entitled to a credit in the adjustment of his accounts, and they should be added to the judgment against the defendants.

It is not the amount involved that is important; it is the principle that must be considered. County officers act at their peril in making purchases on their own account for supplies. The county clerk could have made a requisition upon the board of county commissioners for stamps and it was his duty to do so. He may or may not

have used these stamps in the transaction of official business, but, whether he did or not, the strict rule in such cases should not be relaxed merely because the clerk here may have acted in good faith and have actually used the supplies represented by these two items in conducting his office. The authorities which the defendant invokes are not applicable. *Williams v. Board of County Commissioners,* 27 Ind. App. 207, 60 N. E. 1099, does hold that it was not the intent of the legislature in requiring competitive bids, to include bids for furnishing postage stamps. The Indiana act applicable provided that county officers shall procure at the expense of the county such books, blanks and supplies as shall be required for the transaction of the business of the county. The Indiana court held that the county officers there might purchase postage stamps under this section, and that another statute which required competitive bids did not apply to postage stamps. That case is the one chiefly relied on, but it is not authority for the defendant's contention here. Our statute, section 8687, expressly provides that no county officer shall be allowed to contract for or purchase any supplies at all, and that no such supplies shall be purchased in any other manner than as provided in this act. And section 8694 declares that every member of the board of county commissioners, and other officers of the county who shall undertake to create any liability against the county, except such as he is by statute required to do, shall be personally liable therefor.

Our own previous decisions are strongly against the allowance of these items. In *Mulnix, State Treasurer v. Life Ins. Co.,* 23 Colo. 71, 46 Pac. 123, 33 L. R. A. 827, we held that a statute which makes the secretary of state the purchasing agent of the three great departments, and which requires him to advertise for bids for all articles required, is exclusive and mandatory, and that he has no power to bind the state by purchases made in the open market, and that the state is not liable on quantum meruit for goods, the contract for which was

made in violation of the statute. And we there said, in answer to the argument of the seller of the goods made in violation of the terms of the statute, which is the same as made here, that since the state in that case, and the county in this case, got the benefit of the prohibited act of purchase, the state in the one case or the county in the other, is liable on quantum meruit. But we said in the Mulnix case, and the same principle is applicable here, where the purchase was in express violation of law, no liability at all arises, and the contract is not susceptible of ratification. This is a complete answer to the argument that, though the purchase of postage stamps, not being within the statute requiring advertising for bids, the same, if purchased by the county clerk and used in his office, imposed a liability on the county and the county board may, therefore, after purchase by the clerk, ratify the same by giving credit to the county clerk for the amount of his payment. Moreover, this argument entirely overlooks two other mandatory and exclusive sections of our statute, one of which absolutely prohibits the county clerk contracting for or purchasing any articles at all, and the other provides that if he undertakes to do so, he, and the sureties upon his official bond, shall be personally liable for such indebtedness. In *Colorado Springs v. Coray,* 25 Colo. App. 460, 139 Pac. 1031, we held that services rendered in the construction of a public improvement under a contract which was made without advertising as the statute required in such cases, affords no action against the municipality no matter how valuable the services may be, although the corporation retains the results thereof. We further held, in line with the Mulnix decision, that there could be no recovery on a quantum meruit in that case and that the contract in question, being made in violation of a public law, was not susceptible of ratification. See also *Roberts v. People,* 9 Colo. 458, 471, 13 Pac. 630, where we said that where a claim is clearly not a legitimate charge against the county, the county commissioners have no

power to allow it, and if its allowance is made, the same would neither bind nor estop the county. In *Board of Commissioners v. News-Dispatch Printing Co., supra,* and *Board of Commissioners v. Co-Operative Publishing Co., supra,* will be found a full discussion of the questions involved here and the minority think the decisions of the Oklahoma court are in accordance with its conclusion here. In Oklahoma, as in Colorado, the county commissioners are the purchasing agents of county supplies and it was held that the commissioners could not delegate this duty to their county clerk or to any other person, and that the county clerk, who had no authority to act in the purchase of supplies, could not estop the county by purchasing supplies himself or as agent for the county. See also 7 R. C. L. pp. 936, 946, 961, 964, and 22 R. C. L. p. 460, sec. 122; p. 463, sec. 128.

6. Expert witnesses both for the plaintiff and defendant gave testimony at the trial. The plaintiff's theory of the case seems to be that all of the items represented by these 69 warrants represent moneys received by defendant as fees or from other legitimate sources. The court so held. The conclusion of the trial court was that these amounts should be charged against the county clerk, and that the burden of proof rested upon him to show that he had properly accounted for the same in his settlement or adjustment of accounts with the county. The reasoning of the plaintiff is that when the county clerk billed or presented to the county vouchers, representing these sums and received warrants of the county therefor which he deposited with the county treasurer, the transaction was a double charge by the officer. We think the plaintiff is mistaken. The trial court rightly held that the county clerk is chargeable with these 69 warrants and also chargeable with the amount he received as disclosed by his fee book, and that he must show, and the burden upon him is to show, that he paid these aggregate amounts to the county treasurer either in cash, or the turning back of the warrants he received, and that the

difference, if any, between the two sums will be what he owes to the county. The expert witness for the plaintiff, Mr. Mitchell, says that he does not go so far in his testimony as to say that Mr. White is or is not short in his account, and he further says that he is not to be understood as saying that the clerk has not accounted to the county for this money and that so far as he knows he may have fully accounted therefor. Mr. Mitchell did not make any separate examination of the books of the county treasurer because his instructions were limited to an examination of the records of the county clerk to see if they were correct, after referring to the vouchers involved in this suit and the charges which they represent, because they are the ones in dispute. And while Mr. Mitchell made no effort from the books which he examined, to determine whether or not the proceeds of all these warrants went back to the county, he says that he arrived at the conclusion, as the books which he examined showed, that the county clerk had turned over the balance to the county the amount that was due it.

The testimony of the defendant and of his witnesses is that the county clerk, as shown by the monthly statements which he made, as required by the statute, turned over to the county treasurer either these identical warrants which he had received from the board of county commissioners, or their proceeds in cash, to the full amount of the face of the warrants which in turn correspond to the vouchers which he had submitted to the board of commissioners and to the warrants so received by him. We do not find in the record any substantial or credible evidence that the county clerk did not fully account for the amount of these 69 vouchers, except as to the ones we have hereinabove held him liable for, nor has our attention been directed to anything in the books or records of any county officer to the contrary. The court upon the evidence before it found that the county clerk had fully accounted for each and every one of these vouchers and warrants upon which the account is based, except

as to the traveling expense; and we have held that two other items are to be included within the exception. We do not see how, under our recognized practice, we can set aside such finding of the trial court on the question of fact, except as to the two added items, particularly when there seems to be no reliable evidence opposed to, or in conflict with, the books and official records and the testimony of the county officers upon which the trial court based its decision.

We have not deemed it necessary to comment separately upon all of the propositions urged upon us for we deem the resolution of this case is one largely of fact and not of law. Certainly the rulings of the trial court were as favorable to the plaintiff as these statutes permit. The entire controversy may be summed up in the general statement that the trial court properly held that the county clerk defendant was chargeable with all the moneys which his books and records showed that he had received. In that ruling the court embodied the holding that even though the county clerk had not actually "received" from third persons, as contradistinguished from "earned," the fees which his books showed had been "received," nevertheless all the items under the column headed "Fees," whether earned and collected, or earned but not collected, must be accounted for by the defendant clerk. That is as much as the plaintiff could ask for. To relieve himself of the burden that was upon him the county clerk was required to show, and he showed to the satisfaction of the trial court, that he had accounted for all moneys which he received on the warrants of the county by depositing them, or their cash proceeds monthly with the county treasurer. The trial court was right, so far as it went, in its judgment against the defendants but, as we have held, it should have entered judgment for additional amounts represented by the "Unexplained balance" and the stationery items.

There is no necessity for sending this case back for a new trial or for a reversal. The judgment as entered,

however, will be modified, and the trial court will, and it is instructed to, vacate the same and enter a judgment for the additional two items as to stationery and the unexplained balance and the traveling expense item which made up its original judgment. As thus modified the judgment of the district court is affirmed; the costs both here and below should be taxed against the defendants in error. All the justices concur, except as to allowance for postage stamps; Mr. Justices Whitford, Sheafor and Campbell dissenting as to that item only.