## No. 14,523

McROBERTS *v.* AMMONS ET AL.
(88 P. [2d] 958)

Decided March 13, 1939.   Rehearing denied April 3, 1939.

Mr. NATHAN R. KOBEY, Mr. HUGH M. WOODS, JR., for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THIS is a taxpayer's suit originally instituted in the district court by the plaintiff in error, to whom we shall refer as plaintiff, seeking to enjoin the various state officials named as defendants in error, whom we shall hereinafter call defendants or designate by their individual names or titles, from accepting the delivery of, or paying for, certain trucks, snow plows and other equipment which the complaint charges the defendants have contracted to purchase for the state highway department, contrary to the provisions of the Administrative Code of 1933, chapter 3, '35 C. S. A., pertaining to purchasing equipment for state departments. The trial court refused to grant an injunction and error is assigned to that ad-

judication. The complaint contains no allegations of fraud or collusion on the part of defendants or any of the vendors involved. Though in many particulars not as certain or clear as might be desirable, the evidence is not conflicting as to any material point. It appears that November 23, 1938, a requisition for the purchase of new equipment for the state highway department, to be used for highway maintenance, was presented to the executive council, which, under the administrative code, supra, consists of the governor, the treasurer, the auditor, the secretary of state and the attorney general, and that the members of the council, with the exception of Mr. Bedford the state treasurer, who was absent, unanimously approved the requisition. In so far as the record discloses this requisition was in the usual form prescribed by the rules of the executive council, and specified as the required equipment 27 trucks, 45 snow plows, 27 dump bodies, 10 graders, 12 Topeka mowers and 7 motor graders. An estimate of the unit cost of each of the various items named and the aggregate total thereof amounting to $258,375 were set out in the requisition. With the exception of the designation "Topeka mowers," if this be a trade name, concerning which the record is silent, the requisition, in accordance with Rule No. 13 of the executive council, did not specify the make, trademark or brand of the trucks or other equipment sought to be purchased. After the executive council had approved the requisition, which so far as is disclosed was the extent of its active participation in the transaction, the requisition was delivered to the state purchasing agent who thereupon conferred with Mr. Vail, the head of the state highway department, and various employees thereof, with reference to the number, make and type of equipment units to be purchased, following which certain dealers handling equipment of the make and brand which it had thus been determined should be purchased, were contacted personally or over the telephone by the state purchasing agent or under his direction by representa-

tives of the state highway department and quotations obtained upon the type of equipment selected. Quotations were procured only from the dealers to whom purchase orders were subsequently issued by the purchasing agent and, with the possible exception of one firm with which a conversation was had concerning an alternative type of dump body, not purchased, these vendor dealers were contacted solely with reference to the purchase. In securing the quotations mentioned the state purchasing agent and the highway department used the catalog specifications of the manufacturer of the equipment sought to be purchased. After the quotations thus received had been approved by the state purchasing agent and the highway department, purchase orders for the various types of equipment in the usual form were issued to the vendor dealers.

The plaintiff asserts that the procedure in making the purchases thus pursued is contrary to the provisions of the administrative code, supra, pertaining to department purchases. The portion thereof relating to purchases of the nature here involved is contained in sections 27 to 36 inclusive, chapter 3, '35 C. S. A. In so far as pertinent, section 27 reads as follows:

"The executive council, through the state purchasing agent, shall have authority:

"1. To purchase all supplies, materials and equipment required by the state government or by any department, institution or agency thereof subject to the approval of the chief executive officer thereof and subject to the provisions set forth in this chapter;

"2. To establish and enforce standard forms for estimates, requisitions, orders, contracts and stores control and to establish and enforce standard specifications which shall apply to supplies, materials, and equipment purchased for the use of the state government or by any department, institution or agency thereof; * * * ."

Inter alia, section 28 provides: "Except as provided in this chapter, any or all supplies, materials, and equip-

ment needed by one or more departments, institutions or agencies shall be directly purchased or contracted for by the state purchasing agent, as may be determined from time to time by rules adopted pursuant to this chapter, which rules the executive council is hereby authorized and empowered to make, it being the intent and purpose of this chapter that the state purchasing agent shall purchase collectively all supplies for the state or for any department, institution or agency thereof in the manner that will best secure the greatest possible economy consistent with the grade or quality of supplies best adapted for the purposes for which they are needed; provided, that advertisements for bids shall also call for segregated bids for the separate items which are intended to be used in each institution and that preference be given to the territory contiguous to and within twenty (20) miles of such institution, price and quality being equal. * * * ."

Section 29, which provides for open market and emergency purchases, is rendered impertinent to this proceeding by the allegations of the answer to the effect that the purchases here involved did not come within this classification. Nor has section 30, relating to the establishment of advisory committees on standardization, any bearing upon this controversy.

Section 31 provides: "In the formation, adoption and modification of any standard specification, the state purchasing agent shall seek the advice, assistance, and cooperation of the state departments, institutions or agencies concerned, to ascertain their precise requirements. Each specification adopted for any commodity shall, in so far as possible, satisfy the requirements of the majority of the state agencies which use the same. After its adoption by the state purchasing agent, with the approval of the executive council, each standard specification shall, until revised or rescinded, apply alike in terms and effect, to every future purchase of a commodity described in such specifications."

Section 32 gives the state purchasing agent, with the

approval of the state executive council, the power to adopt, modify or abrogate rules or regulations to facilitate the purposes of the act.

Section 33 is as follows: ''All orders awarded or contracts made by the state purchasing agent shall be awarded to the lowest responsible bidder, taking into consideration the location of the institution or agency, the qualities of the articles to be supplied, their conformity with the specifications, the purposes for which they are required and the date of delivery, but preference shall always be given to Colorado materials, supplies and provisions, by allowing a differential of not to exceed five per cent (5%) in cost on such Colorado materials, supplies and equipment of equal quality. Bids shall be received only in accordance with such standard specifications as may be adopted by the state purchasing agent, with the approval of the executive council, and in the manner provided in this chapter. Any or all bids may be rejected.

''Each bid, with the name of the bidder, shall be entered on a record, and each record with the successful bid indicated shall, after the award or letting of each contract, be opened to public inspection. A bond furnished by a surety company authorized to do business in this state, for the proper performance of each contract may be required in the discretion of the state purchasing agent, with the approval of the executive council.''

Section 34 requires that all equipment shall be furnished upon requisition to the state purchasing agent. Section 35 relates to deliveries of purchased equipment, and section 36 pertains to unlawful purchases.

■ Such of the rules hitherto promulgated in accordance with section 32, supra, as are called to our attention, in no way are inharmonious with the pertinent statutory provisions. Nor are we called upon to determine what discretion, if any, the executive council may have to suspend existing rules, since there is no evidence that any modification or abrogation thereof occurred in this in-

stance. Under these rules and the statute, if any irregularity in the transaction existed, it must have arisen after the approval of the requisition by the executive council, since clearly it was within its expressly conferred discretion to authorize the purchase of equipment for a state department. Subsequent to the approval of the requisition, compliance with the prerequisite appointed by the statute in connection with the awarding of a purchase order, primarily devolves upon the state purchasing agent, and, in a sense, secondarily, upon the state department for which the purchase is authorized. Although decreeing no precise method of advertising or notification, section 33 clearly imports that the purchasing agent shall receive competitive bids under standard specifications prior to the awarding of orders or contracts for the purchase of state or department supplies, materials and equipment. The implication of section 28 is to the same effect. Section 33 expressly provides that each bid, with the name of the bidder, shall be entered on a record and each record with the successful bid indicated shall, after the award or letting of each contract, be open to public inspection. The conferred right to reject any and all bids contemplates that bids shall first be asked and received.

Notwithstanding these provisions, the defendants claim that in awarding the purchase orders here involved, the state purchasing agent enjoyed a wide discretion equivalent to that which would prevail in the consideration of competitive bids where such had been received, and in the selection of the lowest responsible bidder thereunder. The rule on the latter proposition is stated in *Pallas v. Johnson*, 100 Colo. 449, 68 P. (2d) 559. The fallacy of the defendants' contention lies in the circumstance that the discretion attendant upon the consideration of competitive bids *actually received* cannot, logically, create a discretion *to dispense with the receiving* of bids as required by the statute. To so permit would be to nullify the intent and effect of the legislative act.

■ ■ The mere calling for prices by telephone or personal contact on trucks and equipment of predetermined make and brand, exclusively from dealers selling such makes and brands and the issuance of purchase orders to these dealers on the prices quoted, as appears to have been the practice following in this instance, in our opinion does not even approximate the statutory requirement for competitive bids and award to the lowest responsible bidder. It is well established that where a statute prescribes a certain procedure for state officials in connection with the purchase of supplies and equipment, the power of such officials to contract therefor must be exercised in the manner directed, and any contract made contrary to the provisions of the statute is invalid. *Mulnix v. Mutual Ins. Co.*, 23 Colo. 71, 46 Pac. 123, 33 L. R. A. 827. The situation is not altered by the fact that the transaction resulted in no financial disadvantage to the state.

In view of the conclusion above announced we do not consider or comment on the propriety of the employment, in purchase transactions, of catalog specifications as distinguished from the standard specifications mentioned in the statute.

While not of course in any sense conclusive, the construction heretofore given the portion of the act under consideration by the state highway department and the state purchasing agent, is of interest. It appears from the record that in 1935 and 1937, in connection with the purchase of equipment for the highway department to be used for the same purposes as the purchases here questioned and involving a lesser amount of money, form letters headed, "Notice to Equipment Dealers," approved by the state purchasing agent, were issued and generally circulated to the trade by Mr. Vail as head of the highway department advising that: "Quotations for equipment for the State Highway Department as per attached list will be received at the office of the State Purchasing Agent, Room 30 State Capitol Building, Denver,

Colorado, until * * * [a fixed time and date inserted], and will then be publicly opened and read. The State of Colorado reserves the right to reject any or all quotations and to purchase from any quotation submitted the items which it feels will most economically and efficiently do the desired work,'' following which appears pertinent information with reference to the subject. Attached to the letter were standard specifications designating general types but no particular make or brand of the equipment sought to be purchased. The exhibits show numerous bids were received and recorded on equipment of different makes from which list the successful bidder or bidders were selected. The procedure followed in those years would appear to be in strict conformity with the statute. In this connection the purchasing agent for the state highway department, who has held this position during the entire period the administrative code bill has been operative, testified that, in the purchase of any considerable amount of equipment for the state highway department, never before had the procedure followed in the instance before us, been attempted.

The defendants strenuously assert that the plaintiff was without right or capacity to sue, upon the theory that he had no litigious right or interest, since it was not established that his burden as a taxpayer would be increased appreciably by the contract, even if it was unauthorized. This theory may be available in some situations, but it is not applicable to this case where the illegality of which complaint is made was ministerial and administrative in its nature and no question of interference by the courts in the exercise of the political or executive discretion of state officials is involved. *Leckenby v. Post Co.*, 65 Colo. 443, 176 Pac. 490.

As we have indicated, upon the face of the record it would appear that the questioned purchases were made contrary to the provisions of the statute. However, by reason of what appears to be an erroneous conclusion on the part of the trial court, it may be that the defendants

abstained from offering pertinent testimony with respect to the transaction. This situation arose from the following circumstances: Paragraph 4 of the complaint alleged: "That section 33, chapter 3, 2 C. S. A. 1935, which is a section regulating the purchasing of materials, supplies and equipment for the state and its several agencies, and part of the Administrative Code, provides: [here follows a portion of section 33, supra]. That without furnishing specifications or calling for competitive bids thereon, and contrary to the provisions of said section, the said Vail has attempted to purchase trucks, machinery and equipment to the total sum of two hundred fifty-one thousand five hundred seventy-seven dollars ($251,577)." Concerning this paragraph of the complaint, the answer alleged: "That as respects the allegations of paragraph 'IV', they admit that section 33, chapter 4, 2 C. S. A. 1935, is accurately quoted, but deny all and singular the remaining allegations of said paragraph 'IV'; and, on the contrary, allege that said defendant Vail did, prior to purchasing any of the trucks, machinery or equipment in said complaint referred to, furnish due and accurate specifications therefor, and did call for competitive bids thereon, in that, prior to making any such purchase, or giving any such order, he, the said defendant Vail, as well as the defendant, Jankovsky, the state purchasing agent, did ascertain from divers and sundry dealers in said trucks, machinery and equipment, their best price or prices therefor, and for all thereof, and that said orders, as awarded, were in each and every instance to the lowest responsible bidder in that behalf, and not otherwise."

The trial court seemingly held that the portion of the last quoted paragraph following the general denial constituted new matter and since no replication has been filed, the alleged new matter stood undenied and upon this premise assumed that competitive bids were called for, received and considered. We think it apparent that the so-called new matter really amounts to no more than a reiterated denial of the allegations of the complaint and

the ultimate questions involved were in issue without the necessity of a reply on the part of the plaintiff. While this pronouncement of the court was not made until the introduction of evidence had been concluded, the record would indicate that the fallacy prevailed during the trial. The only evidence relating to the procedural details of the transaction came from the plaintiff's witnesses. Under these circumstances we can well understand that the defendants may have refrained from introducing testimony pertaining to an allegation of the complaint which the trial court apparently considered as admitted. Because of this situation we do not direct the issuance of the injunction, as ordinarily would be the procedure, but reverse the judgment of the trial court and remand the cause for further proceedings not inconsistent herewith.

MR. JUSTICE BAKKE dissents.

### On Petition for Rehearing.

PER CURIAM.

This alleged petition for rehearing is in no sense such. The only portion of it pertinent is a waiver of further hearing. To that extent it is considered, and by reason thereof the cause is remanded and the trial court directed to issue permanent injunction.

Rehearing is denied.

MR. JUSTICE FRANCIS E. BOUCK not participating.

MR. JUSTICE BAKKE, dissenting.

With due regard for the position of my associates as expressed in the court's opinion, I think the result is most unsatisfactory, because it imposes further delay and ultimately serves no useful purpose to the interested litigants and people of the state at large. The opinion states, "we do not direct the issuance of the injunction;" yet it cannot but have the same effect, for another trial and

review will consume months and the highway department will be deprived of the use of a quarter of a million dollars worth of necessary equipment.

It is admitted in the opinion that the transaction as finally consummated was fair and resulted in no financial disadvantage to the state. It seems to me that admission negatives any case a taxpayer might have, for, as Cooley says, "The jurisdiction * * * [in a taxpayer's suit] may be sustained on the ground that the injury * * * would be irreparable." Cooley on Taxation, p. 548.

"Since the purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief, not being used for the purpose of punishment or to compel persons to do right but merely to prevent them from doing wrong, rights already lost and wrongs already perpetrated cannot be corrected by injunction, and the party aggrieved must seek some other remedy." 32 C. J. 45.

We may well judicially notice that while this action has been pending, a resolution has been adopted by the executive council which requires the state purchasing agent to buy all of the equipment for the highway department, hence there is no need of enlisting the further aid of the courts to correct what might be termed an inadvertent administrative error, which already has been corrected. To continue this litigation is to cast a dry bone to the proverbial dog in the manger. There is no issue of fraud, collusion or sharp practice raised by the pleadings, and in the last analysis the only wrong appearing is the informality of accepting the bids for equipment over the telephone. Surely it cannot be urged that those charged with the duty of making these purchases must ask for bids from a Chevrolet dealer when they desire to purchase Fords, and since the only purpose of specifications is to determine standards, what is more complete and detailed than the dealer's own catalogue?

"The point that the contract if entered into will violate the competitive bidding provisions of the village charter

is without special merit, so far as concerns the question whether the trial court abused its discretion in refusing the restraining order. The record conclusively shows that bids for the contract were *informally invited* from the only concerns capable of performing the same. [Italics are mine] \* \* \* It appears further, that economically the contract if entered into will substantially reduce the cost of electricity \* \* \*." *Wagner v. Cranmer,* 152 Minn. 114, 188 N.W. 65. I think the facts of this case more closely resemble those in the case at bar than any cited in the briefs of counsel, and the opinion indicates that trial courts should be given some discretion in weighing the relative advantage of granting or refusing injunctions, taking into consideration the best interests of the state.

It is quite evident that this litigation was directed primarily against the state highway engineer. The law requires that he post a $25,000 bond conditioned on the faithful performance of his duties. If he has violated the law, the moving parties here have ample recourse to his bond, particularly when, as above pointed out, plaintiff fails to show any injury as a taxpayer.

The Supreme Court of Oklahoma, without a dissent, only last month refused to enjoin the highway department of that state in a case involving substantially the same legal propositions as this one. *State ex rel. Sanders v. Grisso* (Okla.), 87 P. (2d) 155.

I may suggest finally that, from a legal standpoint, this is a close case and in my opinion we could, and should, resolve the doubt in favor of affirming the judgment.